[PRACTICE.]

### The UNITED STATES *against* MARCHANT & COLSON.

> Where two or more persons are jointly charged in the same indict-
> ment with a capital offence, they have not a *right*, by law, to be
> tried separately, without the consent of the prosecutor, but such
> separate trial is a matter to be allowed in the *discretion* of the
> Court.

*March 12th.*     THE opinion of the Court in this case was delivered
by Mr. Justice STORY.

The question, which comes before us upon a certificate
of a division of opinion of the judges of the Circuit Court
of Massachusetts, is this, whether two or more persons,
jointly charged in the same indictment with a capital offence,
have a *right*, by the laws of the country, to be tried seve-
rally, separately, and apart, the counsel for the United
States objecting thereto, or whether it is a matter to be al-
lowed in the *discretion* of the Court.

We have considered the question, and are of opinion,
that it is a matter of discretion in the Court, and not of
right in the parties. And it has become my duty briefly to
expound some of the reasons which urge us to that conclu-
sion.

The subject is not provided for by any act of Congress;
and, therefore, if the right can be maintained at all, it must
be as a right derived from the common law, which the
Courts of the United States are bound to recognise and en-
force. The Crimes Act of 1790, ch. 9. provides, in the
29th section, for the right of peremptory challenge in capi-
tal cases; and this right, to the extent of the statute, must,

in all cases, be allowed the prisoners, whether they are tried jointly or separately. Upon a joint trial, each prisoner may challenge his full number, and every juror challenged as to one, is withdrawn from the panel as to all the prisoners on the trial, and thus, in effect, the prisoners in such a case possess the power of peremptory challenge to the aggregate of the numbers, to which they are respectively entitled. This is the rule clearly laid by Lord *Coke*, Lord *Hale*, and Serjeant *Hawkins*, and, indeed, by all the elementary writers.[a]

One consequence of this, in ancient times, was, that embarrasments often arose at trials at the assizes, on account of a defect of sufficient jurors. The statute of Westminster 2. ch. 38. ordained, " that in one assize no more shall be returned than twenty-four." The common practice under this statute used to be, for the sheriff to return *forty-eight* jurors, although the precept named but *twenty-four*. It was, indeed, held, at an early period, that the statute of Westminster did not apply to criminal cases ; but, notwithstanding this, the usual practice prevailed, unless the Court directed a larger number to be returned. And it was not until the reign of George II. that a larger number was required by law to be returned at the assizes. The history of this branch of the subject is very clearly stated in 3 *Bac. Abr.* tit. Juries, b. 6. and in *Kelyng's Rep.* 16.[b] It is obvious, that on joint panels, returned for joint trials, at the assizes, a defect of jurors might, from this limitation, often take place. And it became a question, in very early times, whether, under such circumstances, the Court had power, against the will of the prisoners, to sever the panel, and to try them severally, if they insisted upon their right of several challenge. It was decided, upon full consideration, that the Court had this power. To this effect are the cases in *Plowden*, 100. in *Dyer*, 152. b., and in *Kelyng's Rep.* 9. ; and the doctrine has received the sanction of Lord *Hale*, and other writers of the highest authority.

a *Hawk. P. C.* b. 2. ch. 41. s. 9. 2 *Hale's Pl. C.* 268. *Co. Litt.* 156. Beauchamp's case, 9 *Edw.* IV. folio 27. pl. 40. *Plowd. Rep.* 100. *Kelyng's Rep.* 9.

b See also 2 *Hale's P. C.* 263.

Whether, then, prisoners, who are jointly indicted, can, against their wishes, be tried separately, does not admit of a doubt. It remains to consider, whether they can insist upon a several trial.

The sole ground upon which this claim can rest must be, if maintainable at all, that they have a right to select their jury out of the whole panel, and that as upon a joint trial, one may desire to retain a juror who is challenged by another, and, if challenged by one, he must be withdrawn as to all; this right of selection is virtually impaired. But it does not appear to us that this reasoning can, upon the principles of the common law, be supported. The right of peremptory challenge is not of itself a right to select, but a right to reject jurors. It excludes from the panel those whom the prisoner objects to, until he has exhausted his challenges, and leaves the residue to be drawn for his trial according to the established order or usage of the Court. The elementary writers no where assert a right of this nature in the prisoner, but uniformly put the allowance of peremptory challenges upon distinct grounds. Mr. Justice *Blackstone*, in his *Commentaries*, (4 *Bl. Comm.* 353.) puts it upon the ground, that the party may not be tried by persons against whom he has conceived a prejudice, or who, if he has unsuccessfully challenged them for cause, may, on that account, conceive a prejudice against the prisoner. The right, therefore, of challenge, does not necessarily draw after it the right of selection, but merely of exclusion. It enables the prisoner to say who shall not try him; but not to say who shall be the particular jurors to try him. The law presumes, that every juror sworn in the case is indifferent and above legal exception: for otherwise he may be challenged for cause. What jurors, in particular, shall try the cause, depends upon the order in which they are called; and the result is a mere incident following the challenges, and not the absolute selection of the prisoner, resulting from his power of challenge.

This view of the general principle of the common law is very much confirmed by other considerations. It is laid down by *Hawkins*, (*Pl. Cr.* b. 2. ch. 41. s. 8.) that where several persons are arraigned on the same indictment, and severally plead not guilty, it is in the *election of the prosecutor*, either to take out joint venires against them all, or se-

veral against each of them. This plainly supposes that it is in the election of the prosecutor whether there should be a joint or separate trial. If there had been any known right in the prisoner to control this election, it seems incredible that so accurate and learned an author should not have stated it, when the occasion indispensably required him to take notice of a qualification so important to his text. His silence is, under such circumstances, very significant.

But a still more direct conclusion against the right may be drawn frown the admitted right of the crown to challenge in criminal cases, and the practice under that right. We do not say that the same right belongs to any of the States in the Union ; for there may be a diversity in this respect as to the local jurisprudence or practice. The inquiry here is, not as to what is the State prerogative, but, simply, what is the common law doctrine as to the point under consideration. Until the statute of 33 *Edw.* 1. the crown might challenge peremptorily any juror, without assigning any cause ; but that statute took away that right, and narrowed the challenges of the crown to those for cause shown. But the practice since this statute has uniformly been, and it is clearly settled, not to compel the crown to show cause at the time of objection taken, but to put aside the juror until the whole panel is gone through. *Hawkins*, on this point, says, (*Pl. Cr.* b. 2. ch. 43. s. 2. s. 3.) "if the king challenge a juror before the panel is perused, it is agreed that he need not show any cause of his challenge, till the whole panel be gone through, and it appears that there will not be a full jury without the person so challenged. And if the defendant, in order to oblige the king to show cause, presently challenge, *touts paravaile* ; yet it hath been adjudged, that the defendant shall be first put to show all his causes of challenge before the king need to show any." And the learned author is fully borne out by the authorities which he cites, and the same rule has been recognised down to the present times.[a]

a *Hale's P. C.* ch 36. p. 271. 8 *Bac. Abridg.* Jury E. 10. Rex v. Conigsmarke, 9 *Howell's State Trials*, 1. Rex v. Stapleton, 8 *Howell's State Trials*, 502. Rex v. Borosky, 9 *Howell's State Trials*, 1. Rex v. Gray, *Id.* 127. S. C., *T. Raym.* 473. Rex v. Grahme, 12 *Howell's State Trials*, 646. Rex. v. Cook. 13 *Howell's State*

1827.

U. States
v.
Marchant.

This acknowledged right of peremptory challenge exist-ing in the crown before the statute of 33 *Edw.* I., and the uniform practice which has prevailed since that statute, to allow a qualified and conditional exercise of the same right, if other sufficient jurors remained for the trial, demonstrate, as we think, that no such power of selecting his jury be-longs, or was ever supposed to belong, by the common law, to the prisoner; and that, therefore, he could not demand, as matter of right, a separate trial to enable him to exercise it. In a separate or joint trial, he could at any time be de-feated by the crown of such choice, by its own admitted pre-rogative.

The circumstances already alluded to, of the right of each prisoner on a joint trial to exercise his full right of peremp-tory challenge, and the small number of jurors usually re-turned on the panel at the assizes, accounts in a very satis-factory manner for the language used in some of the cases, as to the necessity of directing separate trials where the pri-soners refused to join in their challenges. The plain reason was, that otherwise there could be no trial at all, for defect of jurors, at the same assizes ; and, therefore, the Court, in furtherance of public justice, were accustomed, without the consent of the prisoners, to direct a separate trial. In this way the reason of the practice is understood by Lord *Hale,* (2 *Hale P. C.* ch. 34. p. 263.) and by *Hawkins,* (*Hawk. P. C.* b. 2. ch. 41. s. 9.) and by other more recent writers on common law.[a] In this manner the language of Lord *Holt* in *Charnock's* case, (12 *Howell's State Trials,* 1454. S. C. 3 *Salk.* 81.) is to be interpreted ; for it is manifest, that he could not intend that there could not be a joint trial where the prisoners challenged separately, for no rule was better settled in his time than that they could. Indeed, in *Rex* v. *Grahme,* (12 *Howell's State Trials,* 646. 673.) the same learned judge uses similar language in a sense which admits of no other interpretation ; and this was the answer given to it when cited in a later case for the like purpose.

*Trials,* 311. Rex v. Horne Tooke, 25 *Howell's State Trials,* 1. 24. 1 *Chitty's Crim. Law,* 533. Rex v. Campion, 1 *Howell's State Trials,* 1050

a 1 *Chitty's Crim. Law,* 535. See *Starkie's Crim. Pl.* 35.

That case is *Rex* v. *Noble and others*, in 1713, before Lord Chief Justice *Parker*, and reported in the State Trials. (9 *Hargr. St. Tr.* 1. S. C. 15 *Howell's St. Tr.* 731.) In that case, which was an indictment for murder, Noble moved the Court for a separate trial, and the motion was denied. He was convicted, and when brought up for judgment, he moved in arrest of judgment this very matter, that there was a mis-trial, because (to use his own words) " we were severed in our challenges, and yet were tried together by the same jury;" and he relied upon the language of Lord Holt, in *Charnock's case*, as in point. The Court overruled the objection, and stated, that Lord Holt's language referred solely to the public inconvenience, on account of a probable defect of jurors, and not to any matter of right in the prisoners. Sentence was accordingly passed upon the prisoner, and he was executed. There is a curious and learned commentary appended in a note to this trial, which was printed before the execution of Noble, in which an attempt was made to question the correctness of the decision. But it is therein admitted, that Noble's counsel declined to argue the point, though requested ; from which we cannot but infer, that they thought the objection unfounded. The decision itself has never since been questioned, or denied. We have, therefore, in the present case, not merely the absence of any authority in favour of the matter of right, but the course of practice, and the general reasoning deducible from the prerogative of the crown against it; and, lastly, a direct authority, in times when the administration of criminal justice was unsuspected. on the very point.

Such is the substance of the reasons which induce us to decide against the claim as a matter of right. In our opinion, it is a matter of sound discretion, to be exercised by the Court with all due regard and tenderness to prisoners, according to the known humanity of our criminal jurisprudence.

A certificate is, accordingly, to be sent to the Circuit Court.

CERTIFICATE. This cause came on, &c. On consideration whereof, it is ORDERED and ADJUDGED by this Court.

1827.<br>U. States<br>v.<br>Marchant.

1827.

U. States
v.
350 Chests
of Tea.

that it be certified to the said Circuit Court, that where two or more persons are jointly charged in the same indictment, with a capital offence, such persons have not a right, by the laws of the country, to be tried severally, separately, and apart, the counsel for the United States objecting thereto; but that such separate trial is a matter to be allowed in the discretion of the Court before whom the indictment is tried All which is ordered to be certified, &c.