COMMONWEALTH *vs.* JASPER R. ROBINSON & others.

The wife of one of several defendants, jointly indicted and tried together, is an incompetent witness for the others.

No exception lies to the refusal of a judge to allow separate trials to defendants jointly indicted, although, by trying them together, some of them are prevented from introducing evidence, which would be admissible in their behalf, if tried separately.

Allowing one of several defendants, jointly indicted and tried together, to draw out, by cross examination of one of the witnesses for the Commonwealth, facts pertinent to his defence, though injurious to the other defendants, is no ground of exception by them.

An officer, indicted as an accessory to a burglary, may, for the purpose of explaining his frequent intercourse with those indicted as principals, and to prove his own diligence and fidelity in pursuing them, give in evidence the conversations between himself and another officer as to the best means of gaining their confidence and thereby bringing them to justice; and also the information received by him in answer to inquiries made of persons whom he met while in pursuit of the burglars.

A party, who refuses, at one stage of the trial, to introduce evidence previously offered by him, and ruled out as incompetent, on the objection, afterwards waived, of the other party, may still except to the rejection of the same evidence at a subsequent stage of the trial.

A copy of a newspaper, containing an advertisement of the usual time of arrival of a certain stage coach, is admissible in evidence of the advertised time of such arrival, and of the knowledge of such time by one who usually read the paper.

An indictment, remitted to the court of common pleas by this court, after disposing of exceptions taken in that court, may be remitted to a term now in session; but if no express direction be given, will go to the next term of that court for the same county.

INDICTMENT against Robinson, Smith and Williams, as principals, and Gardner and Babbitt as accessories before the fact,

for breaking and entering the dwelling-house of Lyman F
Rogers, in Barre, in the night time of the 30th of August 1853,
with intent to commit the crime of larceny, and being armed
with a dangerous weapon. Trial in the court of common pleas,
before *Bishop,* J.

The defendants, before trial, moved for separate trials, alleging,
as reasons, the necessity of introducing testimony which on a
joint trial they could not legally use, and the necessity of exclud-
ing testimony which on a joint trial might be indirectly admitted.
But the court refused this motion.

The testimony of the wife of the defendant Babbitt was offered
in behalf of the other defendants, and excluded by the court.

The court rejected all evidence, when offered for the Com-
monwealth, relating to another indictment pending against the
same parties, for another burglary in the same town on the same
night; but allowed the counsel for Babbitt, the counsel for the
other defendants objecting, to draw from John W. Rice, a wit-
ness for the Commonwealth, on cross examination, facts tending
to show that some of the other defendants were in situations to
obtain knowledge of the localities of such other burglaries, with-
out the assistance of Babbitt.

The defendant Williams alleged exceptions to the foregoing
rulings. And Babbitt alleged exceptions to the rulings herein-
after stated.

Evidence was given at the trial of the following facts, as
tending to prove the guilt of Babbitt: That Robinson was at
Babbitt's house, in conversation with him, on the day preceding
the night on which the burglary was committed, and again on
that night, together with one Pond, who was used as a witness
for the Commonwealth, and who admitted his own participation
in this burglary; that on the following morning Robinson was
found in bed at Babbitt's house; and that while Babbitt, then
a deputy sheriff, was in pursuit of the supposed burglars, for the
purpose of arresting them, Robinson and Pond twice called at
his house and inquired for him.

To explain these circumstances, Babbitt alleged that, during
the summer before the commission of the burglary, he ascer-

tained facts sufficient to satisfy his own mind that Robinson was engaged with others in passing counterfeit money; and that he had been devising plans and making efforts to detect them, and cause them to be brought to punishment therefor and for this purpose had endeavored to gain the confidence of Robinson, and, with this object, and no other, had held such conversations with Robinson as to induce him to believe that he (Babbitt) would become a partner with him in that business. And for the purpose of proving these allegations, Babbitt called Appleton Clark, who had been a deputy sheriff, and was possessed of large experience, and proposed to prove by him, that in July 1853 Babbitt called upon Clark, and stated to him the details of the plans which he proposed to adopt for the purpose of detecting the counterfeiters, as before alleged, and advised with Clark upon the expediency and propriety of said plans; and that Clark decidedly approved of them, and advised Babbitt to persevere, and be sure and get the confidence of Robinson by such artifices as he might prudently use, and agreed, when sufficient evidence should have been obtained, to coöperate with him in bringing the criminals to justice. But the judge ruled the evidence incompetent, and it was rejected.

After this evidence had been ruled incompetent, the district attorney waived his objection thereto, and consented to the examination of Clark as a witness; but the counsel of Babbitt declined to examine him.

Appleton Clark, being subsequently called as a witness for the Commonwealth, testified to certain facts which, it was urged, tended to contradict evidence introduced by Babbitt. Upon cross examination, Babbitt asked the witness, if Babbitt in July 1853 had taken his advice upon the subject of a plan to detect Robinson, or Robinson and others, in passing counterfeit money, and to state the conversation, if any was had between them upon that subject; said advice and conversation having no connection with the matters inquired of in the direct examination. Upon objection, the court ruled the question incompetent for any purpose, and the cross examination upon this subject was not permitted.

The district attorney introduced evidence to show that Babbitt, while acting in the capacity of deputy sheriff, and in pursuit of Robinson and Pond, did not act with proper diligence and fidelity, and that his conduct was such as tended to shield them from arrest. To meet this evidence, Babbitt offered evidence of information received by him, upon inquiries addressed by himself and by one Elisha Nye, who accompanied him, to persons with whom they met while in pursuit of Robinson and Pond, and that Babbitt acted in accordance with information so received. But the judge ruled that evidence was inadmissible of what was told them in answer to said inquiries, but permitted the defendant to show what he did in consequence of information so received.

Pond, the witness for the Commonwealth, had testified that Babbitt had told Robinson, Smith and Williams, at two different interviews, in the afternoon before the crime was committed, that one Lawrence had sent that day, by the driver of the Ware stage, to the Ware Bank for money, and that he (Babbitt) would watch the arrival of the Ware stage, and see whether the money came, and inform them. Evidence had been introduced tending to show that the second of these interviews, if it occurred at all, must have taken place after seven o'clock in the evening; and that the ordinary time of the arrival of the Ware stage was from half past six to seven o'clock in the evening, and that Babbitt knew the ordinary time of such arrival, and resided near the stage office, and was frequently at the office on its arrival; that the time of its arrival was advertised in the Barre Gazette, a newspaper published at Barre, and that this newspaper was commonly read by Babbitt. And the driver of the stage testified, that the stage ordinarily arrived at the time advertised, unless unusual cause of delay happened; and he did not recollect that any happened on the day preceding the night of the burglary.

For the purpose of contradicting Pond, and proving the advertised time of the arrival of the stage, and also for the purpose of showing that Babbitt knew of the time of the arrival of the stage, Babbitt offered a copy of the Barre Gazette, issued in the

month of August 1853, and near the time of the burglary, in which was printed an advertisement, stating the time of the arrival to be half past six, as contended by Babbitt. But the judge ruled the evidence incompetent, and refused to permit the paper to be introduced.

The presiding judge, besides the bills of exceptions taken by Williams and Babbitt, allowed the following bill of exceptions filed by Robinson, Gardner and Smith : " The presiding judge ruled as is set forth in the exceptions filed by Williams and Babbitt, which are made a part of this bill. To which ruling the defendants except."

*J. C. Park*, for Williams and Smith.

*G. F. Farley & E. A. Kelly*, for Babbitt.

The other defendants submitted the case without argu-ment.

*J. H. Clifford*, (Attorney General,) for the Commonwealth.

MERRICK, J. The defendants, of whom Robinson, Smith and Williams are charged as principals, and Gardner and Babbitt as accessories before the fact, were all put upon trial at the same time; and each of them was convicted of the crime alleged against him. Being dissatisfied with the course of proceedings upon the trial, and professing to feel aggrieved by some of the rulings and determinations of the presiding judge in relation to questions of law which then arose, they severally filed and procured the allowance of the bills of exception which are before us.

That of Williams is first in order, and may first be con-sidered. It appears from the statement of facts contained in it, that to sustain their defence the wife of Babbitt was called and offered by the other defendants, as a witness in their behalf; but that, upon objection being made to her competency, the ob-jection was sustained, and her testimony rejected. And the question now is, whether the defendants were deprived, by its exclusion, of any of the means of defence to which they were legally entitled. And we think they were not. It is an inflex-ible rule of evidence that parties of record, whether in civil or criminal cases, are not admissible as witnesses for each other

*Commonwealth* v. *Marsh*, 10 Pick. 57. *Sawyer* v. *Merrill*, 10 Pick. 16. And it has been established by a series of uniform decisions, that the wife of one of several defendants, accused of a crime alleged to have been jointly committed, is an incompetent witness, when all of them are on trial, for any of his associates. *Rex* v. *Frederick*, 2 Stra. 1095. *Rex* v. *Smith*, 1 Mood. C. C. 289. *Rex* v. *Locker*, 5 Esp. R. 107. *Commonwealth* v. *Easland*, 1 Mass. 15. It is an immaterial consideration that, in the present case, the defendants asked for and were denied separate trials. We can reëxamine, upon a bill of exceptions, only those questions of law which arose and were ruled upon in the trial which actually took place. Matters within the discretion of the court below are not grounds of exception under the statute. The court of common pleas had authority, and it was clearly within the discretion of the presiding judge, to determine whether the motion for separate trials should be granted or refused. And his decision upon that subject is final and conclusive, and subject to no subsequent revision. *United States* v. *Marchant*, 12 Wheat. 480. *Witherlee* v. *Ocean Ins. Co.* 24 Pick. 67. *Kimball* v. *Thompson*, 4 Cush. 445.

It must be assumed, that the evidence, relating to the other indictment pending against the same parties, which was adduced upon and by means of the cross examination of Rice, by the counsel of Babbitt, was pertinent to his defence. He had therefore a right to avail himself of it, and to submit it to the consideration of the jury, although its introduction was opposed by the other defendants. When, at an earlier stage of the trial, it was offered by the Commonwealth for the purpose of affecting them, it was upon their objection properly rejected by the court. But that did not deprive Babbitt of any right of his in relation to it. It is one of the peculiarities of the trial of an indictment against several persons, who are jointly charged with the commission of one and the same crime, that each is entitled to pursue and maintain for himself his own peculiar line of defence This may sometimes require the introduction of evidence, on the part of one or more of the defendants, to which another may be opposed, and to which, if tried alone, he might successfully in-

terpose an objection. But it is the duty of the court to see, that by whomsoever it is introduced, it is all properly applied; that those, who are entitled to avail themselves of it, shall enjoy the advantages to be derived from it, and that all others, against whom it could not legally be brought to bear, shall be scrupulously and completely screened from its effect. No complaint is made, that the presiding judge did not, in allowing a cross examination of Rice, take care that this proper and necessary discrimination should be observed, or that he failed to give to the jury appropriate and correct instructions, relative to the application of the evidence thus permitted to be introduced, and to the use they were to make of it in reference to each and all of the defendants. And it is to be presumed, that, accompanied by such instruction, its just and legitimate effect, and no more, was given to it by the jury; and that if it aided one, it was not allowed to harm or prejudice any other of the defendants. They have no cause therefore of exception to the course of proceeding which in this instance was permitted by the court.

The evidence offered by Babbitt, to meet and repel the imputation upon his official conduct which the Commonwealth attempted to establish, was admissible, and he ought to have had the privilege of laying it before the jury. He was charged in the indictment with aiding and assisting the principal offenders in the commission of the burglary, as an accessory before the fact. Proof that, after he knew they were prosecuted, he favored their escape; that when, in his capacity of deputy sheriff, he had a warrant against them, and should have pursued them with diligence and vigor, he was intentionally negligent and unfaithful in the discharge of his duty; and that he moved and conducted himself in a manner calculated to screen them from arrest, would tend very strongly to maintain the indictment against him. These facts the Commonwealth for that purpose endeavored to establish. It was therefore of the utmost degree of importance to him to show in his own vindication, that his conduct, in the particular instance in which it was denounced as collusive and criminal, was not only innocent, and warranted by the circumstances in which he was placed, but was required by

the information which he obtained for the very purpose of ena-
bling him' promptly to discharge his duty. One of the means,
by which an officer, having a warrant against an accused party,
may most effectually execute it, is by inquiries of others as to
the supposed place of his concealment, the road and direction in
which he may have been seen travelling, or the way in which he
may have escaped. The officer may therefore always avail him-
self of the information which such inquiries elicit; and if it has
been sought for in good faith, and confided in when given, it
will justify conduct which is the reasonable or natural conse-
quence of it. It was evidence concerning such inquiries, of the
answers and the information thereby obtained, which the defend-
ant offered to produce, but which was held to be incompetent,
and for that reason rejected. This was erroneous. He ought to
have been permitted to show what inquiries were made by Nye
and himself of the persons whom they casually met, while they
were in pursuit of Robinson and Pond, and what communica-
tions were made to them in reply. The evidence was admis-
sible, and its proper effect, when received, was to be judged of
by the jury.

The testimony of Appleton Clark, having been offered by
Babbitt to show that the intimacy and frequent intercourse
between himself and Robinson, which the Commonwealth had
proved in order to evince the existence of a guilty connection
between them, was induced by a good motive, and was in fact
for a lawful and commendable purpose, should have been ad-
mitted. Perhaps his having declined to introduce it, after all
objection to its reception had been withdrawn on the part of the
Commonwealth, might well be construed a waiver of his right of
exception to the ruling by which it had been excluded. But that
is immaterial, since the testimony was again rejected by the
court, as incompetent for any purpose whatever, when the defend-
ant, upon the cross examination of Clark, who was subse-
quently produced as a witness against him, proposed to him
interrogatories designed to elicit the explanation, and endeavored
in that way to obtain it.

The copy of the Barre Gazette also, under the circumstances

stated, upon its genuineness being conceded or duly authenti-cated, was admissible in his defence when offered in evidence by Babbitt. But its exclusion was of no real disadvantage to him, since it appears that the fact of the advertised time of the arrival of the Ware stage at Barre, and of his knowledge of it, had already been established by other undisputed evidence in the case. It is very doubtful therefore, whether we should have considered its rejection, under such circumstances, as affording any cause for disturbing the verdict.

Robinson, Gardner and Smith alleged the same exceptions, which are severally set forth by Williams and by Babbitt. There is nothing in the latter pertaining to any objection which it was competent for either of these parties to take, nor in the excep-tions of Williams which can be more available to them than to him.

It results from these considerations that the exceptions of Babbitt must be sustained, the verdict against him set aside and a new trial granted. The exceptions of all the other parties must be overruled. And the indictment is remitted to the court of common pleas for all necessary further proceedings.

When an indictment is brought from the court of common pleas into this court by force of the provisions of the Rev. Sts. *c.* 138, relative to exceptions, and is afterwards, when the exceptions are here disposed of, ordered to be remitted to that court for further proceedings, it may be sent to it either at a term then being held, or which shall next afterwards be held in and for the same county where it was found by the grand jury, as this court shall direct. If no express direction is given, it will go to the term to be held next after the order for its remis-sion is made.

*Exceptions of Babbitt sustained; of the other defendants, over-ruled; and case remitted to the court of common pleas now in session.*