THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOSEPH R. MOORE AND LEWIS HUHN, PLAINTIFFS IN ERROR.

Submitted July 8, 1907—Decided November 18, 1907.

1. An objection to an indictment that it states that it was presented on the respective oaths and affirmations of the members of the grand inquest, without stating how those who affirmed were privileged to do so, is without foundation, inasmuch as the caption states that the indictment was presented on the oaths of the grand jury.

2. It is not a good ground of objection to an indictment for keeping a disorderly house that it states that one of the elements of disorder therein was the permitted violation of the sixty-fifth section of the Criminal Procedure act (*Pamph. L.* 1898, *p.* 812), which section makes gaming a misdemeanor in itself.

3. On the trial of two persons jointly indicted for keeping a disorderly house, a peremptory challenge of a juror by one defendant was allowed against the protest of the second defendant, and a similar challenge by the second defendant was allowed against the protest of the first defendant. No other peremptory challenges, so far as appears, were made, and therefore there was no curtailment of the right to ten joint peremptory challenges. *Held*, that while the challenges should have been made with the concurrence of both defendants, their allowance worked no harm to the defendants. The rest of the general panel was left from which a jury was selected. The right to challenge is a right to reject and not select jurors. So long as the right to reject was not impaired there was no legal injury.

On error to the Supreme Court.

For the state, defendant in error, *Andrew J. C. Stokes.*

For the defendants and plaintiffs in error, *Thomas P. Fay* and *Ed. G. Forman.*

The opinion of the court was delivered by

REED, J. The defendants, with two others, were indicted by the grand jury of Monmouth county for keeping a disorderly house in that they did, on a certain day mentioned,

and other days and times, cause certain persons to come together therein for the purpose of engaging in gambling, gaming and playing for money and other valuable things at and with cards, dice, E. O. tables, and other tables, instruments, engines and devices, faro bank and other banks of like kind, in the said house of the defendants, at unlawful times, as well in the night as in the day, then and at said other times did there resort and remain, drinking, tippling, fighting, gambling, gaming and playing for money, to the common nuisance of all the citizens of the state and contrary to the form of the statute, &c.

Of the forty-nine assignments of error, only four possess such semblance of substance as to call for any observation in addition to those made in the Supreme Court.

The first of the assignments is to the refusal of the court to quash the indictment.

The first objection to the indictment is leveled at a statement in the indictment that the grand inquest, "upon their respective oaths and affirmation, present the above defendants." The insistence is that the indictment should have set out that the grand jurors who presented under affirmation were privileged to take an affirmation instead of an oath. ·

In support of this insistence the cases of *State* v. *Harris,* 2 *Halst.* 361, and *State* v. *Fox,* 4 *Id.* 244, were invoked.

The requirement that an indictment, when found upon the affirmation of one or more grand jurors, should state that those persons were relieved from taking the oath by some statutory provision was recognized, with reluctance, by Lord Mansfield, in *Rex* v. *Wilkes,* 4 *Burr.* 2527, upon the authority of some older cases. The doctrine was accepted, with equal reluctance, by our Supreme Court, in the case of *State* v. *Harris, supra,* upon the authority of an unreported case, known as Sharp's case. The doctrine was repudiated in Massachusetts, in the case of *Commonwealth* v. *Fisher,* 7 *Gray* 492. An objection to an indictment upon the same ground was ignored in the case of *Reg.* v. *Mulcahey, L. R.,* 3 *H. L.* 306. So far as I have traced it, it has not, nor need it be now, passed upon by this court.

The statement itself is equivocal, for it may mean that each juror, upon his respective oath and affirmation, did present, &c., or it may mean that some upon their oaths and some upon their affirmations did present, &c. On turning to the caption it appears that the jury, by their· oaths, presented the indictments at the term in which this was found. While for the purpose of amendment the caption is not a part of the indictment (*State* v. *Jones,* 4 *Halst.* 357), yet it may be used to aid the indictment. 22 *Cyc.* 236, 239.

Thus Chief Justice Ewing, in speaking in the case of *State* v. *Fox, supra,* says that the point decided in the Sharp case was that the grand jurors who took the affirmation must be shown in the indictment *or caption* to be within the exception. Inasmuch as the caption shows that all were sworn, there was no need of any further statement respecting the qualification of the jurors.

The next assignment which I shall notice attacks the jurisdiction of the Court of Quarter Sessions to try the indictment.

The point of this attack is that the indictment was found in the Court of Oyer and Terminer, was not returned to that court, and was not sent to the Court of Quarter Sessions for trial. The testimony taken upon this point, however, shows that the grand jury returned the indictment to Judge Foster, the judge in the Court of Common Pleas, in the absence of Mr. Justice Hendrickson, the presiding judge of the Court of Oyer and Terminer. The indictment being one which was triable in the Court of Quarter Sessions, it, under the provisions of section 6 of the Criminal Procedure act of 1898 (*Pamph. L., p.* 868), was one not required to be sent to the Court of Oyer and Terminer for trial, and therefore remained in the Court of Quarter Sessions, where it was properly tried.

Several of the assignments of error are aimed at what is designated the double aspect of the indictment, which, it is claimed, left the defendants uninformed whether it was an indictment for keeping a disorderly house or one for violating section 65 of the Crimes act. *Pamph. L.* 1898, *p.* 812. It was manifestly an indictment for maintaining a disorderly house. The specific mention of the acts of gaming carried on

in that house was to exhibit the maintenance of an illegal act or series of acts therein, which, when habitual, impressed upon the place the character of a nuisance. A disorderly house may result from maintaining a place wherein any of the practices mentioned in the indictment—tippling, fighting or gaming—are permitted to be carried on. As the testimony developed on the trial of the indictment, the misdemeanor could have been charged in the indictment or in a count in the indictment, under section 65 of the Criminal Procedure act, but none the less the habitual use of a house for gaming, as for any other illegal practice, constitutes a disorderly house at common law.

It is again assigned for error that a juror was challenged by one of the two defendants on trial, which challenge was allowed against the protest of the other defendant, and another juror was challenged by the other defendant, which challenge was allowed against the protest of the first defendant. It is to be remarked that there had been a severance of two of the four defendants indicted, and only two were on trial. The defendants, being jointly indicted and jointly put upon trial, were jointly entitled to ten peremptory challenges. *State* v. *Rachman,* 39 *Vroom* 120; *State* v. *MacQueen,* 40 *Id.* 522.

This construction of the statute is put upon the legislative language, namely, "The defendant or defendants and the attorney-general or the prosecutor of the pleas shall each be entitled to challenge peremptorily ten of the general panel." *Pamph. L.* 1898, *p.* 896, § 81. When two or more are on trial jointly, it would seem that they must join in their challenges. The statute obviously does not mean that one shall be limited to five challenges and the other to five challenges, or that the first defendant who challenges shall defeat the right of his joint defendant to challenge. That defendants shall have the right to challenge ten means that they collectively must challenge or assent to the challenge, and that each shall have a right to say whether a challenge shall be interposed.

Assuming, however, that the trial court was not bound to allow the two peremptory challenges in the present case, it is

not perceived that the defendants were in any degree injured by the course taken by the trial judge. The effect of the two challenges was merely to reduce by two the number of the general panel from which the trial panel was to be selected. The right to peremptorily challenge members of the general panel is a right to reject, and not to select, the jurors for the trial panel.

In the case of *United States* v. *Marchant & Colson,* 12 *Wheat.* 480, the question of the right of jointly indicted defendants to a severance came before the federal Supreme Court. In delivering the opinion of the court, in denying the right, Judge Story observed: "The sole ground upon which this claim can rest, if maintainable at all, must be that they have a right to select their jury out of the whole panel and as upon a joint trial when they desire to retain a juror who is challenged by another defendant, and if challenged by one he must be withdrawn as to all, this right of selection is virtually impaired." The learned judge proceeded to say: "The right, therefore, of challenge does not necessarily draw after it the right of selection, but merely that of exclusion. It enables a person to say who shall not try him, but not to say who shall be the particular jurors to try him. The law presumes that every juror sworn in a case is indifferent and above legal exception, for otherwise he would be challenged for cause. What jurors may result is a mere incident following the challenges, but not the absolute selection of the prisoner resulting from his power of challenge."

In this case the selection of a trial jury from the general panel was in no way impaired. It does not appear in the record that the two defendants jointly challenged any of the panel. The right, therefore, of joint challenge was restricted in no particular by having the two challenges mentioned charged up against them. It does not appear that any jurors other than the two mentioned were challenged. Indeed, it appears that the very condition was brought about by the conduct of the counsel for the respective defendants. Each had challenged against the objection of the other and accepted the ruling of the court in his own favor, and so each

had helped to deplete the general panel and produce the condition of which he complains.

We find no error in the record, and the judgment of the Supreme Court should be affirmed.

*For affirmance*—MAGIE, CHANCELLOR, HENDRICKSON, PITNEY, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.    11.

*For reversal*—None.