UNITED STATES of America, Appellee,

v.

Romaine PHILLIPS, Appellant at
No. 88–1136.

UNITED STATES of America, Appellee,

v.

Matthias BROWN, a/k/a "Sonny,"
Appellant at No. 88–1151.

Nos. 88–1136, 88–1151.

United States Court of Appeals,
Third Circuit.

Argued Oct. 17, 1988.

Decided April 10, 1989.

Rehearing and Rehearing In Banc
Denied May 31, 1989.

Joseph M. Fioravanti (argued), Curran, Winning & Fioravanti, P.C., Media, Pa., for appellant Romaine Phillips.

Stephen P. Patrizio (argued), Dranoff & Patrizio, Philadelphia, Pa., for appellant Matthias Brown.

Gary S. Glazer (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before SLOVITER and HUTCHINSON, Circuit Judges, and DEBEVOISE, District Judge *.

OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

I.

Appellants Romaine Phillips and Matthias Brown appeal their convictions for conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. § 1962(d) (West 1984). They assert the district court erred in several respects. First, appellants contend that the evidence was insufficient to sustain their convictions. Next, they argue that the district court erred in instructing the jury that it could convict the appellants of RICO conspiracy if it found that they had agreed to participate in two or more racketeering acts, including racketeering acts they say were not specifically named in the indictment. Finally, they argue that the district court abused its discretion in not declaring a mistrial when co-defendant Conrad Cheeks reached a plea agreement with the government after participating in juror selection. We hold that the evidence was sufficient to sustain appellants' convictions for RICO conspiracy. We also hold that the district court did not err in instructing the jury it could convict the appellants on the basis of racketeering acts generally set out in the

indictment. Finally, we hold that the district court did not abuse its discretion in failing to declare a mistrial after the government announced its plea agreement with Cheeks. We will therefore affirm.

II.

On August 20, 1987, a federal grand jury returned a six count indictment in the United States District Court for the Eastern District of Pennsylvania. It charged a former Philadelphia Common Pleas Judge, Kenneth S. Harris, along with Conrad Cheeks, Thomas Henshaw and appellants Phillips and Brown with violations of RICO, 18 U.S.C.A. §§ 1962(c), (d) (West 1984) and Hobbs Act extortion, 18 U.S.C.A. § 1951 (West 1984). Count I charged RICO conspiracy against Harris, Cheeks, and appellants Phillips and Brown. Count II charged substantive RICO against Harris, Cheeks and appellant Phillips. Counts III through VI charged only Harris, Cheeks and Henshaw with Hobbs Act extortion. On November 17, 1987, the district court granted a motion to sever the charges against Henshaw.

Jury selection began on January 5, 1988. In the evening of January 6, co-defendant Cheeks and the government reached a plea agreement. The next morning, immediately after the selection of the final three alternate jurors, the government announced in open court that Cheeks had decided to change his plea to guilty on Count I and that the government would move to dismiss the rest of the indictment as to him. Joint Appendix (Jt.App.) at A–352–53, A–354. After the plea agreement was finalized, the district court accepted Cheeks's plea to RICO conspiracy. *Id.* at A–381. In return, Cheeks agreed to testify against his co-defendants, including appellants Phillips and Brown. Later that afternoon, all remaining defendants moved for a mistrial. *Id.* at A–184. That motion was denied, but the court did grant a continuance until January 9, 1988. *Id.* at A–189. The court then swore in the jury and told

* Hon. Dickinson R. Debevoise of the United States District Court for the District of New Jersey sitting by designation.

them that they would "not be considering the case against Conrad Cheeks." *Id.* at A–348. The court repeated this statement during its charge to the jury. *Id.* at A–258.

On January 19, 1988, at the conclusion of the government's case, the district court granted appellant Phillips's Federal Rule of Criminal Procedure 29(c) motion for acquittal on the RICO substantive violation in Count II. *Id.* at A–241. The jury found appellants Phillips and Brown guilty of RICO conspiracy under Count I.

The district court sentenced Phillips to five years incarceration, a $5,000 fine and a $50 special assessment. It sentenced Brown to eight years imprisonment. It denied their post-trial motions for judgments of acquittal under Federal Rule of Criminal Procedure 29(c), arrest of judgment under Federal Rule of Criminal Procedure 34 or a new trial under Federal Rule of Criminal Procedure 33 on March 14, 1988. Brown and Phillips filed timely notices of appeal from their convictions.

We have appellate jurisdiction under 28 U.S.C.A. § 1291 (West Supp.1988). Our scope of review is plenary over whether the evidence is sufficient to sustain appellants' convictions and over whether the district court erred in its instructions to the jury. We review the district court's decision not to declare a mistrial for abuse of discretion.

### III.

This case involves a series of extortions by Harris and others in exchange for "fixing" cases. Harris became a judge of the Court of Common Pleas of Philadelphia in 1984. Conrad Cheeks served as his judicial aide. Brown occupied no formal position in the court system but frequented Harris's judicial chambers and the anteroom adjacent to Harris's courtroom. Brown had known Harris for many years and held himself out as Harris's stepson. Phillips was a former assistant district attorney for the City of Philadelphia and Assistant United States Attorney for the District of Columbia. He had entered private practice in 1982.

Count I, the conspiracy count on which Phillips and Brown were convicted and from which they take this appeal, charges Harris, Cheeks, and appellants Phillips and Brown with conspiring to violate RICO, 18 U.S.C.A. § 1962(c), by conducting the affairs of the Court of Common Pleas of Philadelphia, an enterprise affecting interstate commerce, through a pattern of racketeering activity. Count I does not allege specific individual acts of racketeering; it simply states that the defendants conspired to commit "multiple" acts of bribery in violation of 18 Pa.Cons.Stat.Ann. § 4701 (Purdon 1983), and extortion in violation of 18 U.S.C.A. § 1951(a). Jt.App. at A–60–61.

Count I also charges fourteen specific instances of case-fixing committed in furtherance of the conspiracy. Four of them involve Phillips and two involve Brown. With respect to them, the evidence shows the following.

Phillips was implicated in *Commonwealth v. Rodney Brown,* where Harris sought $700 from Phillips, Rodney Brown's attorney, in exchange for "fixing" Brown's case. On May 13, 1986, Harris suppressed evidence crucial to the government's case against Brown. On May 14, 1986, an order of *nolle prosequi* was entered. Cheeks testified at trial that on May 15, 1986, Phillips gave him $700 to give to Harris for the ruling dismissing the case against Brown.

*Commonwealth v. Loretta Massey* also involved Phillips. Loretta Massey, Harris's court reporter, had been arrested on drug possession charges. In April 1986, Harris referred her to Phillips for representation. According to Cheeks's testimony at trial, Phillips paid Harris a $250 referral fee. *Id.* at A–520–21. Videotape evidence showed Phillips paying Harris $50 in the anteroom of Court Room 313 in City Hall on September 9, 1986. *Id.* at A–153. During that meeting, Phillips discussed his need for a continuance. On September 10, 1986, Harris asked the Philadelphia Municipal Court judge who had charge of Massey's case to continue it. Harris told Massey that he had obtained a continuance for her, and that he "couldn't count on" that particular judge. *Id.* at A–162. Massey's case was

then assigned to Municipal Court Judge Ronald Merriweather. She was acquitted.

The third act of case-fixing implicating Phillips was *Commonwealth v. Carl Thomas*. There, Harris sought a payment from Carl Thomas in exchange for his release from jail and a probationary sentence. On May 28, 1986, Thomas, who was represented by the public defender's office, was found guilty of various drug offenses. Harris immediately raised his bail and Thomas was incarcerated. Sentencing was deferred. Later that day, Harris met Phillips in the anteroom of Court Room 313 and told him to go see Thomas and then let Harris know what happened. *Id.* at A–134. Phillips went to the jail, falsely identified himself as the attorney representing Thomas, met with Thomas and advised him that he would represent him in exchange for $2,000, that he would get him out on bail, into a drug treatment program in connection with the case which had already been tried but not sentenced by Harris, and would also represent him in connection with a case set to go to trial before another judge. Thomas told Phillips that he could not afford the fee. Phillips then left. Harris later complained to Cheeks that he did not hear from Phillips after referring the Thomas matter to him. *Id.* at A–525.

Finally, Phillips was involved in *Commonwealth v. Alvis Mapp*, where Harris and co-defendant Thomas Henshaw referred Mapp to appellant Phillips for representation. In early October 1986, Mapp gave $500 to Henshaw. At trial, Mapp testified that he understood the $500 was to insure assignment of his case to Harris. *Id.* at A–404. On October 7, 1986, Mapp's case was assigned to Harris's courtroom. On October 10, 1986, the government intercepted a conversation in which Harris told Henshaw that they needed money to pay the person who had put the case in his courtroom. *Id.* at A–169. Phillips testified at trial that Harris was supposed to give the money to Phillips for Mapp's defense. However, other evidence showed that Henshaw, who was supposed to deliver the money to Harris, had a conversation with Harris that day and explained that he did not come to court on that date because he

was ill. In its opinion and order denying appellants' post-trial motions, the district court noted that the jury could have disbelieved Phillips's explanation. *United States v. Harris*, No. 87–296, slip op. at 9, 1987 WL 25209 (E.D.Pa.1987); Jt.App. at A–22. Harris was removed from the bench before hearing Mapp's case.

Brown was involved in the matter of *Commonwealth v. Joseph Heffron*, in which he allegedly solicited money from James McNesby whose nephew, Joseph Heffron, was appearing before Harris. On April 2, 1986, Harris revoked Heffron's probation and sentenced him to 1–½ to 3 years of incarceration. At Harris's direction, Brown told McNesby that he could "take care" of the case and get Heffron released. Unbeknownst to Brown, McNesby was a police officer. McNesby reported the incident to the Ethics Accountability Division of the Philadelphia Police Department and an undercover investigation began. On April 4, 1986, McNesby met with Brown in the lobby near Judge Harris's chambers. Brown told McNesby that Harris had agreed to accept $1,500 in exchange for the release of McNesby's nephew. McNesby objected to the price, and Brown left for a minute, returned and said "the Judge told him $1,000." Jt.App. at A–675–76. McNesby paid Brown $100 as a downpayment. *Id.* at A–677.

On April 9, 1986, Brown met with McNesby along Juniper and Commerce Streets in Philadelphia. Harris was walking nearby and Brown left twice during the meeting with McNesby to confer with Harris. McNesby paid Brown $400 in order to expedite the release of his nephew from jail. On April 10, 1986, McNesby paid Brown an additional $500. On April 16, 1986, Brown told McNesby that he had only paid Harris $900 and that McNesby would have to pay an additional $100 to secure Heffron's release. On April 17, 1986, Brown received the final $100 from McNesby and on that day Harris released Heffron from custody.

In *Commonwealth v. Laverne Taylor*, Brown approached Laverne Taylor, who had just been sentenced by another judge.

Brown said that he could arrange for her not to go to jail if she paid him money. She then observed Brown and Harris meeting. Taylor testified that she did not give any money to Brown because she did not believe that anyone would be asking for such a small amount of money for such a big favor. *Id.* at A–972. Brown told her that the next time she was in trouble, she should see Brown early so that the case could be assigned to Harris or a judge that Harris could influence. *Id.*[1]

## IV.

### *Sufficiency of the Evidence*

The appellants contend that there is insufficient evidence to show that they agreed to commit, or even knew about, two or more of the predicate acts listed in Count II and that we must therefore reverse the district court's denial of their motions for judgment of acquittal. This argument is based on the assumption that the government could only rely on evidence regarding the predicate acts alleged in Count II to establish appellants' agreement to the commission of two or more racketeering acts.[2] The jury, however, found appellants guilty of the RICO conspiracy charged in Count I of the indictment. Appellants frame their sufficiency argument as if the only evidence the jury could consider on the Count I RICO conspiracy is evidence which tends to show an agreement to do the specific predicate acts

charged in the substantive RICO charge of Count II. This argument fails if Count I is not simply a conspiracy to do the specific racketeering acts set out in Count II. There are significant differences between Counts I and II which indicate to us that appellants' premise is wrong.

■ In their post-trial motions, Phillips and Brown argued their case on the same assumption that Count I failed to allege, and the government failed to prove, that they agreed to commit two of the racketeering acts specified in Count II.[3] The district court rejected this argument, holding that there was substantial evidence for the jury to find that appellants agreed to conduct the affairs of the Court of Common Pleas through a pattern of racketeering with "knowledge that at least two acts of racketeering of the *type* listed in the indictment [would] be performed." Dist.Ct. slip op. at 7; Jt.App. at A–20 (emphasis supplied). The parties considered Count I as alleging a conspiracy to violate Count II, despite the fact that Count II's racketeering acts are not incorporated into Count I. Count I simply charges multiple acts of bribery and extortion within a specified time frame. Because Count I alleges a pattern of racketeering activity consisting of multiple acts of bribery and extortion, the jury was free to consider any act of bribery and extortion that occurred within the time frame of the conspiracy.[4] There-

---

1. The only other evidence against Brown was the testimony of Roger Taylor, Brown's father-in-law. Roger Taylor testified at trial that Brown had introduced him to Harris and Cheeks and that he contacted Cheeks and Brown about a fine he was obligated to pay. The district court concluded this was only marginally relevant.

2. The only act in Count II involving Phillips was *Commonwealth v. Sligh,* racketeering act no. 3, and the only act involving Brown was *Commonwealth v. Heffron,* racketeering act no. 2.

3. In the district court, Phillips and Brown attacked the sufficiency of the conspiracy indictment itself pursuant to Rule 34 on the same assumption that Count I is merely the conspiracy analogue to the substantive offense charged in Count II. They do not make that argument here, seeking only to limit the government in its proof of Count I RICO conspiracy to knowledge

of the predicate acts charged in Count II. The defects in the indictment are not jurisdictional, *see infra* note 4. Accordingly, they are waived.

4. We were initially troubled by the sufficiency of Count I of the indictment because of its failure to specify, with particularity, which acts of bribery and extortion appellants allegedly agreed to commit. However, Count I charges the elements of RICO conspiracy, 18 U.S.C.A. § 1962(d), as described in *United States v. Riccobene,* 709 F.2d 214, 220–21 (3d Cir.) (to show elements of RICO conspiracy, government must establish that an enterprise within meaning of § 1961(4) existed and that defendants knowingly agreed to participate in it through pattern of racketeering activity), *cert. denied,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983) and *United States v. Adams,* 759 F.2d 1099, 1116 (3d Cir.) (defendant need only agree to commission of two or more racketeering acts, not to personally

fore, we reject appellants' contention that in considering the sufficiency of the evidence we can only look to those acts of bribery and extortion set out as predicate acts in Count II. Instead, we will review the evidence regarding the multiple acts of bribery and extortion alleged in Count I to see if it is sufficient to sustain appellants' RICO conspiracy convictions. We view such evidence in a light most favorable to the government. *United States v. Riccobene*, 709 F.2d 214, 224 (3d Cir., *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983).

■ In denying appellants' post-trial arguments that the evidence was insufficient to support their convictions, the district court correctly stated that a pattern of racketeering activity requires that the jury find:

> that each defendant knowingly and willfully agreed to join the conspiracy with knowledge of its goals and knowledge that at least two acts of racketeering of the type described in the indictment (*i.e.*, bribery under state law and extortion under federal law) would be performed by some member(s) of the conspiracy.

Dist.Ct. slip op. at 3–4. The court relied on evidence introduced by the government regarding *Commonwealth v. Massey, Commonwealth v. Mapp, Commonwealth v. Thomas* and *Commonwealth v. Brown*, all alleged as overt acts in Count I, as proof that Phillips had agreed to the commission of two or more acts of racketeering. Similarly, the district court relied on *Commonwealth v. Joseph Heffron, Commonwealth*

*v. Laverne Taylor* and the Roger Taylor matter, also alleged as overt acts in Count I, to show that the evidence supporting Brown's RICO conspiracy conviction was sufficient.

This evidence is sufficient to show that appellants agreed to participate in an enterprise which they knew conducted its affairs through a pattern of racketeering activity generally described as more than one act of bribery and extortion. Indeed, the evidence shows not only knowledge but actual commission of four specific acts on the part of Phillips and two on the part of Brown.[5] Accordingly, we hold the evidence is sufficient to support appellants' RICO conspiracy convictions. We will therefore affirm the district court's denial of judgment of acquittal on this ground.

## V.

### *Jury Instructions*

■ Appellants next argue that the district court erred in instructing the jury that it could find them guilty of a RICO conspiracy if the evidence showed that each agreed to the commission of two or more racketeering acts of bribery or extortion, whether or not those racketeering acts were specified in the indictment. We will grant a new trial if the district court erred as a matter of law in instructing the jury. *United States v. Adams*, 759 F.2d 1099, 1116 (3d Cir.), *cert. denied*, 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985); *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir.1981).

commit them), *cert. denied*, 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985). The indictment also sufficiently apprises the appellants of the charges against them and protects them against future double jeopardy problems under our decision in *United States v. Kenny*, 462 F.2d 1205, 1214 (3d Cir.) (Travel Act indictment which charges underlying elements of crime by reference to statutory violations of extortion and bribery and specifies time period of conspiracy not insufficiently vague under Fifth and Sixth Amendments), *cert. denied*, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972). To the extent the indictment is otherwise deficient, appellants have waived the issue by failing to raise in this appeal the district court's denial of their request for a bill of particulars.

5. These acts are specifically set out in the indictment as overt acts. Although better practice would have listed them as predicate acts, not overt acts, they are acts of bribery and extortion within the definition of the racketeering acts generally set out in the charging language of Count I. To exclude their consideration by the jury in the absence of a bill of particulars which places them outside its confinement would be unnecessary and unreasonable. While we are concerned about the generality of Count I's charging language, *see supra* note 4, we are constrained by our internal operating rules and prior case law upholding an analogous indictment. *See United States v. Kenny*, 462 F.2d 1205, 1214 (3d Cir.), *cert. denied*, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972).

During its charge to the jury, the district court, referring to the Count I RICO conspiracy charge, instructed:

> You may conclude from all the evidence that the various acts that are alleged—and I have defined your burden on those—you may conclude that other conduct took place other than those seven acts [listed in Count II]. Consider all the evidence and determine whether or not the defendant you are considering on the conspiracy charge knowingly and willfully agreed by words or conduct to participate in a conspiracy that would have as its object the allegations of Count 2, that it would be an enterprise, as described in the indictment, engaged in interstate commerce as described in the indictment, whose affairs would be conducted as described in the indictment, through a pattern of racketeering, as I have outlined here, and that someone would commit two acts of extortion or bribery.
>
> It is not necessary that they know that the two acts be the very ones on page 2 [of the verdict slip], because the conspiracy began in April. Some of the events may not have occurred until later, so you don't have to agree in advance that someone will agree that someone will commit any of those particular acts. It is just two acts of extortion and/or bribery under state law and extortion under the federal law.

Jt.App. at A-277–78.[6] In discussing the government's burden, the court charged that it must prove "that the defendant you are considering agreed to become a member of the conspiracy that would have that as its object, that being what is described in the indictment, and that someone would commit at least two acts of federal extor-

tion or state bribery." *Id.* at A-278–79. In concluding, the court said:

> So, in regard to the conspiracy in this case, members of the jury, in order for the defendant you are considering to become guilty of the offense of conspiracy under Count I, you must determine whether or not the evidence satisfies you beyond a reasonable doubt that the defendant you are considering knew that the affairs of the Court of Common Pleas of Philadelphia were to be conducted through a pattern of racketeering activity as described in the indictment. You will recall that that means that he knew that at least two acts of bribery and/or extortion, as I have defined to you, would be committed by another member of the conspiracy sometime during its course, for the purpose of attempting to achieve one or more of the objects of the conspiracy, and with that knowledge agreed to become a member of the conspiracy.
>
> It is not necessary that the government prove the defendant you are considering be found to have agreed, again, personally to commit any of the acts set forth in the indictment. What is necessary is that the proof show that the defendant knowingly and willfully agreed to join the conspiracy with knowledge of its goals and the knowledge that at least two acts would be committed.

*Id.* at A-283–84.

Appellants allege that this charge allowed the jury to look beyond the seven racketeering acts in Count II and convict the defendants under Count I if they had knowledge of two or more crimes of bribery or extortion. As we have analyzed the indictment, that was permissible. *See supra* Section IV. The jury was free to consider any act of bribery and extortion oc-

---

**6.** We note the apparent confusion in this portion of the district court's charge, probably caused by the awkward construction of Counts I and II of the indictment. Count II incorporates the charging language of Count I by reference, but Count I does not incorporate Count II. Strictly speaking, the object of the Count I conspiracy was the conduct of the enterprise through a pattern of bribery and extortion, not just the specific acts alleged in Count II. To the

extent the court's charge incorrectly limited the jury to considering only the racketeering acts specifically set out in Count II, its adverse impact was on the government, not appellants. We also note that construing this instruction as one limiting the jury in its consideration of Count I to the government's proof of the specific racketeering acts set forth in Count II would seem inconsistent with the later portion of the court's charge, set out *infra.*

curring within the time frame of the conspiracy, in accord with this circuit's case law on RICO conspiracy. *See United States v. Boffa*, 688 F.2d 919, 937 (3d Cir. 1982) (upholding a jury instruction where district court defined "racketeering activity" "as the commission of 'at least two of the acts of racketeering alleged in the indictment'"), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983). In defending the district court's jury charge, the government argues that "[t]here is no requirement in the law in this circuit that the predicate act be any particular predicate act, as long as it is of a type described in the indictment." Brief for Appellee at 20.

Appellants rely heavily on *United States v. Neapolitan*, 791 F.2d 489 (7th Cir.), *cert. denied*, 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). In *Neapolitan*, the United States Court of Appeals for the Seventh Circuit considered whether the district court's instruction that "*'[t]he government need only prove that each defendant conspired to commit the offense of conducting the affairs of an enterprise through a pattern of racketeering activity'*" allowed the jury to "exceed the scope of the indicted conspiracy in search of other crimes to serve as predicate acts." *Id.* at 503 (emphasis in original), 504. The Seventh Circuit said:

> It would have been preferable if the court had specifically required the jury to find that each defendant agreed to the commission of at least two of the predicate acts listed in the indictment. This element of the offense, however, was implicitly included in the charge through the court's definition of pattern of racketeering activity, which was described as part of the object of the conspiracy.

*Id.* at 504. The Seventh Circuit did say the district court erred in defining "racketeering activity" as "*any* act ... *such* as [the ones] charged in [the substantive counts] of the indictment." *Id.* (emphasis in original). However, because the defendants failed to timely object, the Seventh Cir-

cuit's review of this instruction was limited to plain error, and it found none. In our case, there was a proper objection and any error is preserved. However, *Neapolitan* is distinguishable because there the government set out specific predicate acts to make up the pattern of racketeering activity and would have been properly confined to them in its proof if the issue had been preserved.[7] Here, the government was not so limited and can rely on any act of bribery and extortion, so long as that act occurred within the time frame of the conspiracy and was established by proofs at the trial. *See Kenny*, 462 F.2d at 1214.

## VI.

### *Juror Selection*

■ Finally, appellants argue that the district court should have granted a mistrial when Cheeks decided to plead guilty after the jury was selected. We review the district court's denial of their motion for a mistrial for abuse of discretion.

Appellants contend that their right to freely exercise their peremptory challenges was compromised because Cheeks was negotiating a plea agreement with the government while juror selection was ongoing. They argue that Cheeks participated in the shaping of the jury and was also privy to the defense's jury selection strategy. They also question why the government waited until after selection of the final three alternate jurors on January 7, 1988 to announce Cheeks's decision to plead guilty, which had been reached the previous evening.

While it is true that the four defendants were allowed twelve peremptory challenges to be divided as defense counsel agreed, and that counsel for Cheeks exercised two of these on January 6, 1988, it is also true that Cheeks had not yet reached a plea agreement with the government and therefore was still a defendant in the case. Until Cheeks reached an agreement with the government, he had every right to participate in juror selection. Appellants con-

---

7. We note that in *Neapolitan* the Seventh Circuit required that the predicate acts underlying the RICO conspiracy charge be specified, rather than generally identified as here. *Neapolitan*, 791 F.2d at 501.

cede that they knew that there was always a possibility that Cheeks would become a government witness and plead guilty. App. at A–187. They argue, however, that the government had a duty to inform the district court and the parties of ongoing negotiations so that a different juror selection process could have been used. Appellants cite no authority for this proposition. Instead, they rely on case law holding that the denial or impairment of the use of a peremptory challenge is reversible error without a showing of prejudice. *See, e.g., Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965). However, appellants have not demonstrated that their *use* of their collective peremptory challenges was either *denied* or *impaired* because one of their co-defendants was engaged in ongoing negotiations with the government while participating in the juror selection process. Furthermore, the peremptory challenge is a right to exclude potentially prejudiced jurors, not to select favorable ones, and in multiple defendant trials a co-defendant must use his peremptory challenges in conjunction with the other defendants', even if it means losing a favorable juror or having to use a challenge in a way other than he would like. *United States v. Marchant & Colson,* 12 Wheat. 480, 25 U.S. 480, 6 L.Ed. 700 (1827); *see also Swain,* 380 U.S. 202, 243–44, 85 S.Ct. 824, 848–49 (Goldberg, J., dissenting).

It is not clear why the government waited until after selection of the final three alternate jurors on January 7, 1988 to announce Cheeks's decision to plead guilty. Here, however, we do not believe the delay in the announcement of Cheeks's decision had any effect on the jury selection process for the following reasons. First, appellants concede that Cheeks's counsel's only participation in the selection of the final three alternate jurors was his agreement to the use of a challenge by Harris's counsel. Second, none of the alternate jurors selected that day participated in deliberations.

Finally, a plea agreement is not final until it is accepted by the court and, until that time, the accused remains a defendant in the case.[8] We therefore conclude that the district court did not abuse its discretion in failing to declare a mistrial.

## VII.

For these reasons, we will affirm the district court's denial of appellants' post-trial motions pursuant to Federal Rules of Criminal Procedure 29(c), 33 and 34.

---

**8.** During their argument for a mistrial, the parties complained to the district court that Cheeks's initial participation as a defendant and later participation as a government witness tainted the impartiality of the jury. App. at A–184. Appellants chose not to raise this argument on appeal and have therefore waived it.

We note, however, that there is precedent for a defendant to plead guilty after jury selection and later testify against his co-defendants without cause for a mistrial. *See United States v. Price,* 447 F.2d 23, 30 (2d Cir.), *cert. denied,* 404 U.S. 912, 92 S.Ct. 232, 30 L.Ed.2d 186 (1971).