James **TERRY**, Appellant,

v.

C. C. **PEYTON**, Superintendent of the Virginia State Penitentiary, Appellee.

No. 13328.

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1970.

Decided Nov. 10, 1970.

V. Cassel Adamson, Richmond, Va., for appellant.

Paul Bender, Washington, D. C., for amici curiae (Ralph S. Spritzer and James A. Strazzella, Philadelphia, Pa., on brief).

W. Luke Witt, Asst. Atty. Gen. of Virginia, for appellee (Andrew P. Miller, Atty. Gen. of Virginia, on brief).

Before BRYAN and WINTER, Circuit Judges, and WIDENER, District Judge.

WIDENER, District Judge:

This case comes on appeal from an order of the District Court denying relief from conviction by way of writ of habeas corpus.

On November 4, 1965, appellant James Terry was convicted of robbery following a non-jury trial in the Hustings Court of the City of Petersburg, Virginia. The Supreme Court of Appeals denied a petition for writ of error on April 26, 1967. Subsequently, Terry petitioned the trial court for a writ of habeas corpus. Relief was denied and the Supreme Court of Appeals refused a writ of error to that judgment. The District Court denied Terry's present petition of February 28, 1969, and this appeal followed.

Appellant advances two contentions in this court which were examined in the post-conviction habeas proceedings. First, Terry contends that he was subjected to an illegal arrest which tainted his subsequent identifications by the complaining witness. Second, he urges that the circumstances surrounding his out-of-court identification were so unnecessarily suggestive and conducive to irreparable misidentification as to amount to a denial of due process of law.

On October 1, 1965, James W. Talley, a cab driver, was returning to Petersburg from Fort Lee, Virginia. At approximately 12:30 a. m., he picked up two passengers who directed him to a Petersburg address. Upon arriving at the address, Talley was told to back up and pull over behind a parked car, which he did. One of the passengers, who was sitting in the front seat with Talley, then brandished a pistol and robbed Talley of his money and a change purse. The interior light of the cab was on at the time, and Talley, as he later testified, had gotten a "good look" at the passenger in the front seat. Upon his release by the robbers, Talley reported the incident to police, furnishing them with a description of the man in the front seat as "tall," "slim," "dark-complected," with a "moustache," and wearing "dark clothes" and a "hat." Police Patrolman Forrest Easter investigated the area surrounding the scene of the robbery but was unable to locate any suspects and returned to police headquarters. At approximately 4:00 a. m., Easter and Captain M. B. Biggs went to Terry's home, which was located some twelve to fifteen blocks from the scene of the crime. Arriving at the house, the officers knocked at the door, and Terry, dressed in underclothes, answered. After informing him that a man had been robbed, they requested Terry to come to police headquarters and allow the victim to take a look at him. He agreed to do so and accompanied them to the station, where, after a short time, Talley arrived and identified Terry as the assailant who was seated in the front of the cab. Terry

was thereupon placed under arrest and later indicted for the robbery of Talley. At the trial, held only thirty-three days after the robbery, Talley again identified Terry as one of his assailants.

■ It is Terry's contention that, although his formal arrest followed Talley's identification, he was, in fact, arrested when police officers took him to the police station after finding him at home. At that stage of the events, it is urged, police had no probable cause to make an arrest, and Talley's subsequent identifications were thereby tainted. The District Judge found that the circumstances accounting for Terry's presence at the police station did not amount to an arrest, concluding rather that Terry had voluntarily and without objection accompanied the two officers. We find it unnecessary to test the correctness of that ruling and affirm dismissal of the petition on other grounds.

Assuming that Terry's out-of-court identification was tainted as the product of an illegal arrest, the record discloses that his in-court identification had an independent source, Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), and was thus " * * * purged of the primary taint." United States v. Wade, 388 U.S. 218, 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1968). Talley testified that the actual robbery took "two or three minutes" to complete. During that time, the cab's interior light was on and he was afforded a clear view of his assailant who was seated next to him in the front seat. There were no apparent discrepancies between the description which Talley gave to the police and Terry's actual description. The identification at the police station took place immediately (within four hours) after the crime, leaving little chance that Talley's in-court identification, barely a month later, would be based upon the earlier identification rather than upon his recollection of the robber during the crime. See United States v. Marson, 408 F.2d 644, 651 (4th Cir. 1968), cert. den. 393 U.S. 1056, 89 S.Ct. 695, 21 L.Ed.2d 698. Finally, Talley's identification of

Terry at the trial was positive and unwavering. Notwithstanding cross-examination which thoroughly explored potential avenues of misidentification, Talley displayed no doubt that Terry was his assailant. We can find no basis in these facts for concluding that the in-court identification was founded upon any event other than Talley's ample opportunity to view his assailant during the robbery.

▉▉ Terry's second contention challenging the constitutionality of his out-of-court identification necessarily falls with the conclusion that his identification at trial had an origin independent of the events which transpired at the police station. Vance v. State of North Carolina, 432 F.2d 984 (4th Cir. 1970). We are of opinion, moreover, that the contention falls of its own weight.

The record reveals that Terry, upon reaching the station, went into a room to await Talley. When Talley arrived at some time around 4:00 a. m., he was brought to the room where, at this time, Terry and Officer Easter were sitting. Talley entered the room and, upon seeing Terry, identified him as the man who had held the gun and robbed him. The fact of this identification was received into evidence at the trial a month later on cross examination by the judge.

It is conceded by counsel for appellant that the holdings of United States v. Wade, *supra*, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), are inapplicable to the present case. Those cases, requiring that an accused be afforded an opportunity to have counsel at a line-up, were specifically given prospective effect only in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Reliance instead is placed upon language in *Stovall* which suggests that a pre-trial identification may be attacked on the grounds that, viewed in the " * * * totality of the circumstances surrounding it * * *," it is " * * * so unnecessarily suggestive and conducive to irreparable mistaken identification * *," as to amount to a denial of due process.

388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199; see also Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966). It is urged in the case at bar that Terry's out-of-court confrontation with Talley was constitutionally defective under the foregoing standard.

As the Supreme Court noted in *Stovall*, the identification procedure whereby suspects are viewed singly by a witness rather than as part of a line-up has been widely condemned, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199. However, due process is not invariably violated by such a procedure. See Biggers v. Tennessee, 390 U.S. 404, 408, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968), (Douglas, J., dissenting). Nor does due process " * * require that every pre-trial identification of a witness * * * be conducted under laboratory conditions of an approved line-up." United States v. Davis, 407 F.2d 846, 847 (4th Cir. 1969). Rather, each case must be considered on its own facts to determine the likelihood that a particular pre-trial confrontation resulted in irreparable misidentification. Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Considering appellant's claim in accordance with *Stovall* and *Simmons*, we cannot say that the procedure by which Terry was identified, viewed in light of the totality of circumstances surrounding it, was so unduly prejudicial as fatally to taint his conviction.

It is apparent that none of the circumstances which are generally thought to enhance the probability of mistaken identification resulting from viewing a suspect alone were present in the instant case. As noted, Talley had a clear view of his assailant. He was thus able to describe him in several particulars and to base his subsequent identification of Terry on the latter's total appearance: "The same clothes and old hat." Compare Palmer v. Peyton, *supra*. The short interval between occurrence of the crime and identification at the police station was not conducive to misidentification but tended rather to insure a fresh, accurate identification. Bates v. United

States, 132 U.S.App.D.C. 36, 405 F.2d 1104 (1968). In view of these and other facts hereinbefore discussed, we conclude that there was no substantial likelihood of misidentification. While we do not in this opinion wish to approve one-on-one confrontations as a general rule, we cannot say that the circumstances surrounding the identification of Terry the night of the robbery, considered in their totality, were so unnecessarily suggestive and conducive to irreparable misidentification as to amount to a denial of due process.

■ Appellant also asserts as constitutional error the trial judge's elicitation of testimony from Talley regarding the out-of-court identification. After Talley identified Terry on direct examination, the following conversation took place:

The Court: Had you seen him before?

Talley: No, sir, not that I recall.

The Court: When did you next see him after this occurrence?

Talley: In Court, in Lower Court, and—no—I seen him in Police, you know when Captain Biggs brought him down to police headquarters that night.

The Court: Recall him down there then?

Talley: Yes, sir, he had, you know, the same clothes and old hat where he had on—

The Court: How long was that after the occurrence?

Talley: I think it was about four, about four o'clock.

The Court: Three or four hours later?

Talley: Yes, sir.

Terry's able trial counsel made no objection to the questions or the testimony. In fact, the present contention appears to have been raised for the first time before this court. It is well settled that

habeas corpus may not be used as a substitute for an appeal.[1] Moreover, we think that counsel's failure to object, under the circumstances, amounted to a waiver of the claim now urged. Significantly, Terry was tried without a jury. The trial judge apparently made the inquiry in order to determine to what extent, if any, Talley's in-court identification was founded upon an out-of-court event other than the crime itself. The tone of his questioning could in no way be characterized as friendly to the prosecution. Indeed, the inquiry was obviously made in Terry's best interest and could only have aided his defense. Such was no doubt apparent to Terry's extremely competent defense counsel, whose aggressive efforts throughout the trial focused upon the sole issue of Talley's identification, and who himself cross-examined Talley at length regarding his out-of-court identification. We should not, at this point in the proceedings, afford an opportunity to challenge evidence and tactics earlier deemed by trial counsel to be unobjectionable and sound. Under Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1962), relief may be denied a habeas applicant who,

"* * * after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures * * *"

The Supreme Court had occasion to apply this rule to the contemporaneous-objection requirement in Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), wherein trial counsel had failed to make timely objection to the admission of evidence alleged on appeal to have been illegally seized. Noting the strategic reasons which might have motivated counsel's silence

---

1. See, e. g., Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947); Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1943).

upon admission of the evidence at trial, the court stated:

"* * * If either reason motivated the action of petitioner's counsel * * counsel's deliberate choice of the strategy would amount to a waiver binding on petitioner and would preclude him from a decision on the merits of his federal claim either in the state courts or here. Although trial strategy adopted by counsel without prior consultation with an accused will not, where the circumstances are exceptional, preclude the accused from asserting constitutional claims, see Whitus v. Balkcom,[2] 333 F.2d 496 ([C.A.] 5th Cir. 1964), we think that the deliberate bypassing by counsel of the contemporaneous-objection rule as a part of trial strategy would have that effect in this case." 379 U.S. 443, 451, 85 S.Ct. 564, 569, 13 L.Ed. 2d 408.

The Supreme Court of Appeals of Virginia, citing the above language in *Henry*, has ruled that a trial attorney's failure to make timely objection to a verdict's variance from an indictment is binding upon the defendant and precludes consideration of the issue on appeal. Henson v. Commonwealth, 208 Va. 120, 127, 155 S.E.2d 346, 349 (1967); see also Williamson v. Commonwealth, 211 Va. 57, 175 S.E.2d 285 (1970) for the timely objection rule applied to evidence. We see no reason to distinguish application of the contemporaneous-objection rule in the instant case. Thus, even were the issue properly before us, which it is not, Terry would be bound by his trial counsel's decision not to object to Talley's testimony regarding his out-of-court identification.

Finally, even assuming that a constitutional infirmity attended Terry's out-of-court identification, admission of testimony regarding it would not necessarily constitute error entitling him

to relief. See United States v. Cunningham, 423 F.2d 1269, 1275 (4th Cir. 1970). Counsel *amicus curiae* urges that the testimony "was apparently accorded weight" by the trial judge. Assuming such, we are confident that the trial judge, sitting without a jury, received the testimony with appropriate scrutiny. His rather searching inquiry, as noted, showed a judicious caution toward accepting Talley's in-court identification as a basis for conviction. That caution was evident throughout the trial which, as conceded by aforementioned counsel in oral argument here, "was conducted in a terribly admirable way by the judge—terribly fair." We are of opinion that any supposed error in the admission of such testimony would be harmless under Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967).

Having carefully considered the points raised by appellant, we perceive no denial of his constitutional rights. The denial of his petition is therefore

Affirmed.

---

2. We are not here presented with the "grisly" choice which defendants faced in *Whitus* and in Fay v. Noia, *supra.* See also McNeil v. North Carolina, 368

F.2d 313 (4th Cir. 1966), which, like *Whitus*, involved a challenge to an unconstitutionally selected jury.