John Louis WEEMS, Petitioner,

v.

UNITED STATES of America,
Respondent.

Civ. A. No. 72–251.

United States District Court,
D. Maryland.

May 14, 1973.

John Louis Weems, pro se.

George Beall, U. S. Atty., for the D. Maryland, and Paul M. Rosenberg, Asst. U. S. Atty., for the D. Maryland, Baltimore, Md., for respondent.

## OPINION AND ORDER

WATKINS, Senior District Judge.

On July 13, 1967, John Lewis [Louis] Weems, petitioner, was convicted in this Court by a jury of kidnapping under 18 U.S.C. § 1201(a). He was subsequently sentenced on October 19, 1967 to life imprisonment. On July 16, 1968, the conviction was affirmed on appeal, United States v. Weems, 398 F.2d 274 (4th Cir. 1968), cert. den., 393 U.S. 1099, 89 S.Ct. 894, 21 L.Ed.2d 790 (1969). Between the date of his sentencing and June 2, 1970, petitioner addressed at least fifteen letters to this Court, one of which was construed as a

motion to vacate or reduce sentence and was denied. Thereafter, petitioner filed a petition under 28 U.S.C. § 2255 wherein he contended, in substance, that much of the evidence upon which he was convicted was unconstitutionally obtained in derogation of his right to be free of unreasonable searches and seizures under the Fourth Amendment. This was not one of the issues upon which his appeal in United States v. Weems, supra, was based. This Court dismissed that petition in an unpublished Memorandum Opinion and Order, Civil No. 70–659–W, filed on January 21, 1971; the Court of Appeals affirmed that dismissal in an unpublished memorandum decision, No. 71–1292, filed on December 8, 1971, for the reasons stated by this Court in the dismissal of January 21, 1971.

Petitioner's tendency to be prolific was again manifested in and after the filing of the present petition under 28 U.S.C. § 2255 wherein he relies upon two grounds to support what he styles as a "Motion to Vacate": (Literal transcription, brackets in original).

(1) that "Petitioner was denied due process and the equal protection of the law by the [racial exclusion [of nerro representatives] of the community from service as prospective jurors"; and

(2) that "Petitioner was denied counsel at a 'critical stage of this proceedings against him when counsel's presence is constitutionally required.'"

█ For his first ground, what petitioner complains of in his petition, is that peremptory challenges were used, pursuant to Rule 24(b) of the Federal Rules of Criminal Procedure, to exclude negroes from the petit jury that heard the petitioner's case by, as petitioner asserts, Weem's co-defendant, Washington. However, the record is silent as to which of the defendants struck the negroes, or even whether the Government used any of its challenges to remove blacks from the jury; but the record does reflect that Washington's attorney, in the presence of petitioner's attorney and while at the Bench on other matters, stated

that Washington desired an all-white jury:[1]

MR. BOURNE: I might say this, while we are at the Bench, Your Honor: in discussing with counsel the approach to picking jurors, we discussed whether we should include negroes on the jury panel or strike them off, and I felt that I should ask the Defendant his preference in the matter, and he indicated to me that he did not want any negroes to sit on the jury.

THE COURT: Well now, that is a matter for your determination, and you may have enough strikes, I am sure, between you two, to exclude them.

MR. BOURNE: I did want it on the record that he did respond.[2]

Assuming without deciding, as petitioner asserts, that Washington's attorney used his challenges to remove blacks from the jury, this Court concludes that this claim, although one of first impression in this district and apparently unresolved by any other federal court, is totally without merit thereby eliminating any need for any evidentiary hearing. Raines v. United States, 423 F.2d 526 (4th Cir. 1970).

At the outset it is noted that the Court fails to perceive a factual dispute with regard to the issue of lack of blacks on the jury. Petitioner has very diligently avoided stating throughout his various petitions that he was unaware that Washington's attorney desired to have an all white jury and that he was unaware of his own attorney's apparent agreement with this decision. Weems merely asserts, in summary, (1) that it *does not appear in the record* that he agreed to an all white jury, (2) that *the record does not show* that he knew that blacks were to be excluded, (3) that *the record does not show* that petitioner was advised that all blacks were to be systematically excluded, (4) that *petitioner did not participate in the exclusion* of blacks from the jury and (5) that petitioner's *attorney did not advise petitioner* that Washington desired an all white jury.

Petitioner's failure to state that he did not know, but only that the record does not show, that the attorneys were going to exclude all blacks from the jury is certainly not by inadvertence. The Government made the same claim in its "Answer and Memorandum in Opposition to Motion to Vacate" and the petitioner in several responses to the Government's motion continuously failed to assert that he did not have knowledge of the planned tactics and that if he did have knowledge that he did not agree to the plan. With the case in this posture, what petitioner asks this Court to do is to rule upon an abstraction rather than a concrete legal issue presented in an actual case. Without this required controversy, this Court simply lacks jurisdiction to render a decision on this issue. Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

■ Furthermore, even assuming that there was jurisdiction and taking petitioner's allegations as true, this claim must fail inasmuch as the petition lacks a showing of prejudice constituting a denial of due process. Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971); Smith v. United States, 449 F. 2d 176 (5th Cir. 1971). The failure of the record to reflect that which petitioner desires it to reflect, i.e., Nos. 1, 2 and

---

1. For the reasons hereinafter discussed, it is not material to ascertain whether it was the Government and/or one or both of the defendants' attorneys who were responsible for the absence of blacks on the jury by the use of peremptory challenges. If before a finding could be made on this issue there had to be a determination as to which party exercised challenges to remove blacks, if that be the way it was done, then this claim would be dismissable for lack of proof as required in Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187 (1948) and United States v. Williams, 421 F.2d 529 (8th Cir. 1970).

2. The trial notes taken by the undersigned indicated that the jury was composed of eight white males and four white females.

3 above, certainly is not an issue, without more, cognizable in a federal habeas corpus proceeding. It is true that the record is used to record that which transpires at a trial. But it is equally true that this recordation of events is merely one instrument used to preserve for reproduction incidences which might be needed to be ascertained at some later date; and, absent indications on the record sufficient to determine what occurred where a factual issue is raised, testimony may be utilized in order to fill any void in the record. However, petitioner's very carefully phrased responses wherein he adroitly failed to state his acquiescence, or the lack of it, in the plan to exclude blacks from the jury, negates any need to resurrect the events surrounding the exclusion of blacks during the jury selection process. Accordingly, no prejudice can flow from the record's silence on this issue. Smith v. United States, 449 F.2d 176 (5th Cir. 1971). Additionally, No. 4 above, that petitioner did not "participate" in the exclusion, and No. 5 above, that his attorney did not "advise" petitioner concerning Washington's desire for an all white jury, do not rise to constitutional dimensions where, as before, petitioner fails to state, after given several opportunities to do so, his lack of knowledge or acceptance of the plan. Again, there can be no prejudice in these claims as framed by Weems because they raise questions the answers to which are consistent with his failure to state his awareness and involvement in the plan. As to the latter, it is clear that Weems need not himself participate in the execution of the plan in order to be held to agree to it, and Weems' attorney need not inform him of the plan when he already knows.

■ Granting that petitioner has in some way alleged a lack of knowledge in his petition, this Court would believe that to be an untenable position since Washington, his attorney and petitioner's attorney all had knowledge of the plan[3] to exclude blacks and visibly had to select whites over blacks during the course of the selection process, and since petitioner observed not only these acts but he also observed that a white jury was ultimately selected from a racially mixed panel. Although this form of petitioner's participation demonstrates an understanding and knowing course of action amounting to a waiver of his right to object, Fay v. Noia, 372 U.S. 391, 93 S.Ct. 822, 9 L.Ed.2d 837 (1963); Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Kaufman v. United States, 394 U.S. 217, 89 S. Ct. 1068, 22 L.Ed.2d 227 (1969); United States v. Gomez, 457 F.2d 593 (4th Cir. 1972); Parker v. United States, 184 F. 2d 488 (4th Cir. 1950), this Court need not entirely rely upon waiver by petitioner himself as a basis for dismissal of this issue. It is quite clear that Weems' trial counsel's compliance with Washington's plan precludes Weems from a decision on the merits of his federal claim since this choice of strategy amounts to a waiver by the attorney binding on petitioner.[4] Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943); Williams v. United States, 463 F.2d 1183 (2nd Cir. 1972); Terry v. Peyton, 433 F.2d 1016 (4th Cir. 1970); United States v. Williams, 421 F.2d 529 (8th Cir. 1970); Jones v. Director, Patuxent Institution, 351 F.Supp. 913 (D. Md.1972). See also United States v. Gomez, 457 F.2d 593 (4th Cir. 1972); Comment, Developments In The Law— Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1109 (1970).

■ Waiver takes many forms. Aside from that attributed directly to

---

3. Apparently the tactical theory was that since the victim and the defendants were all black, a white jury might not find guilt as readily as a black jury. See also Swain v. Alabama, 380 U.S. 202, 225, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

4. Petitioner does not claim, and nowhere in the record does there appear, that petitioner or his attorney were faced with a "grisly" choice so as to inhibit their assertion of constitutional claims. Terry v. Peyton, 433 F.2d 1016, 1021, n. 2 (4th Cir. 1970).

knowledge on the part of either the petitioner or his attorney or both, as set out above, waiver can also be premised on the failure of Weems to assert this issue not only before trial, which is normally required, but also his failure to present this issue for consideration at any time during the five otherwise prolific years prior to the filing of this petition. Smith v. United States, 449 F.2d 176 (5th Cir. 1971); Moore v. United States, 432 F.2d 730, 740 (3rd Cir. 1970); United States v. Williams, 421 F.2d 529, 532 (8th Cir. 1970); Gregory v. United States, 391 F.2d 281 (9th Cir. 1968); cert. den., 393 U.S. 870, 89 S.Ct. 157, 21 L.Ed.2d 138 (1968); Smith v. United States, 337 F.2d 450 (7th Cir. 1964). See also Shotwell Mfg. Co. v. United States, 371 U.S. 341, 362, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); Frazier v. United States, 335 U.S. 497, 512, 69 S.Ct. 201, 93 L.Ed. 187 (1948); Atlas Roofing Mfg. v. Parnell, 409 F.2d 1191 (5th Cir. 1969); Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973).[5]

Departing from the myriad issues raised by waiver, there is a substantive basis, derived from closely related cases, for dismissing what apparently amounts to a claim of improper exercise of peremptory challenges by a co-defendant. On this point the Supreme Court in Stilson v. United States, 250 U.S. 583, 586, 40 S.Ct. 28, 30, 63 L.Ed. 1154 (1919) teaches that:

> There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges to defendants in criminal cases; trial by an impartial jury is all that is secured. The number of challenges is left to be regulated by the common law or the enactments of Congress. That body has seen fit to treat several defendants, for this purpose, as one party. If the defendants would avail themselves of this privilege they must act accordingly. *It may be, as is said to have been the fact in the trial of the present case, that all defendants may not wish to exercise the right of peremptory challenge as to the same person or persons, and that some may wish to challenge those who are unobjectionable to others. But this situation arises from the exercise of a privilege granted by the legislative authority and does not invalidate the law. The privilege must be taken with the limitations placed upon the manner of its exercise.* [Emphasis Added]

Further, in Frazier v. United States, 335 U.S. 497, 505, 69 S.Ct. 201, 206, 93 L.Ed. 187 (1948), the Court in speaking of peremptory challenges stated:

> Given ten arbitrary choices among twenty-two prospective jurors not disqualified for cause, of whom thirteen were Government employees and nine privately engaged, he knowingly, of his own right, rejected nine of the latter and with knowledge or the full opportunity to secure it accepted without challenge all but one of the former. It would seem that ordinarily one anxious to secure a jury representative of both private and public employment in a community like Washington, and particularly to avoid overweighting the jury with Government employees, well might have found a more effective way of utilizing his peremptory challenges to achieve those objectives.

> The right of peremptory challenge is given, of course, to be exercised in the party's sole discretion and was so

---

5. *Davis, supra,* apparently overrules such cases as Fernandez v. Meier, 408 F.2d 974 (9th Cir. 1969), cert. den., 404 U.S. 863, 92 S.Ct. 106, 30 L.Ed.2d 107 (1971), rehearing denied, 404 U.S. 961, 92 S.Ct. 308, 30 L.Ed.2d 280 (1971) and Chee v. United States, 449 F.2d 747 (9th Cir. 1971) wherein failure to assert a right at the appropriate time during the course of the trial as required by the federal criminal rules would bar appellate relief but would not bar relief under 28 U.S.C. § 2255 unless the claim was waived pursuant to the edicts of Fay v. Noia, *supra.* Davis holds that a claim once waived pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure may not be later resurrected in the absence of the showing of "cause" which that rule requires.

exercised here. We do not question petitioner's privilege to utilize his peremptory challenges as he did. *But the right is given in aid of the party's interest to secure a fair and impartial jury, not for creating ground to claim partiality which but for its exercise would not exist.*

.    .    .    .    .    .

In ruling upon petitioner's objection the trial judge assessed the situation as follows: "Chance has resulted in this jury panel of twelve being composed of Government employees, but the jury list from which they by change were selected is a mixture of Government employees and private employees." Even in this view of what took place, petitioner has no cause to complain. *The well-settled rule is that, given a lawfully selected panel, free from any taint of invalid exclusions or procedures in selection and from which all disqualified for cause have been excused, no cause for complaint arises merely from the fact that the jury finally chosen happens itself not to be representative of the panel or indeed of the community. There is, under such circumstances, no right to any particular composition or group representation on the jury.* [Footnotes omitted and Emphasis Added]

This characterization of the statutory grant of peremptory challenges as a virtually unbridled right if exercised within the boundaries enumerated by the statute[6] found expression again in Swain v. Alabama, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965) where the prosecutor used his peremptory strikes to remove all blacks from the trial jury venire:

Although historically the incidence of the prosecutor's challenge has dif-

fered from that of the accused, the view in this country has been that the system should guarantee "not only freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the state the scales are to be evenly held." Hayes v. Missouri, 120 U.S. 68, 70 [7 S.Ct. 350, 351, 30 L.Ed. 578].

*The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control.* State v. Thompson, 68 Ariz. 386, 206 P.2d 1037 (1949); Lewis v. United States, 146 U.S. 370, 378 [13 S.Ct. 136, 139, 36 L.Ed. 1011]. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. Hayes v. Missouri, 120 U.S. 68, 70 [7 S.Ct. 350, 351, 30 L.Ed. 578]. It is often exercised upon the "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another, *"Lewis, supra,* [146 U.S.] at 376, [13 S.Ct., at 138], upon a juror's "habits and associations," Hayes v. Missouri, *supra* [120 U.S.], at 70 [7 S.Ct., at 35], or upon the feeling that "the bare questioning [a juror's] indifference may sometimes provoke a resentment," *Lewis, supra* [146 U.S.], at 376 [13 S.Ct., at 138]. *It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prose-*

---

6. For other cases agreeing with this conclusion see Annot., Use of Peremptory Challenge to Exclude from Jury Persons Belonging to a Race or Class, 4 A.L.R. 2d 1200 (1949). *See also* United States v. Marchant, 25 U.S. (12 Wheat.) 480, 6 L.Ed. 700 (1827). Notably, in *Marchant* severance was held to be a matter of discretion with the trial court despite the defendant's claim that his right to select a juror would be impaired should his co-defendant strike that juror. In reaching this conclusion, the Court stated that under the common law "The right of peremptory challenge is not, of itself, a right to select, but a right to reject jurors." *Marchant,* supra at 481.

*cutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be.* It is well known that these factors are widely explored during the *voir dire,* by both prosecutor and accused, Miles v. United States, 103 U.S. 304, [26 L.Ed. 481]; Aldridge v. United States, 283 U.S. 308 [51 S.Ct. 470, 75 L.Ed. 1054]. This Court has held that the fairness of trial by jury requires no less. *Aldridge, supra.* Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried.

*With these considerations in mind, we cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause.* To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, *pro tanto,* would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned. [Footnotes omitted and Emphasis Added]

■ It is certainly in keeping with the above line of cases that if prosecutors may peremptorily strike blacks from a jury and if co-defendants who exercise the statutory privilege are required to do so as one person and with the other limitations placed upon the manner of its exercise, Weems, *who elected a joint trial with Washington,*[7] cannot now be heard to object to procedures utilized by his co-defendant, if he be the one responsible,[8] to exclude blacks from the jury. Nor can the resulting all white jury, derived through the use of peremptory challenges, be attacked as constitutionally insufficient where, paraphrasing *Frazier, supra,* the well-settled rule is that no cause for complaint arises merely from the fact that a chosen jury happens not to be representative of a properly selected panel or indeed of the community. Frazier v. United States, 335 U.S. 497, 506, 69 S. Ct. 201, 93 L.Ed. 187 (1948); Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L. Ed.2d 536 (1972); United States v. Mackey, 474 F.2d 55 (4th Cir. 1973); 47 Am.Jur., Jury § 164 and § 176.[9] See

7. Weems has not contested the election of joint trials in this petition and indeed he cannot since he and his attorney specifically agreed to that procedure. TR 6/12/67 at pages 9–11; TR 7/5/67 at page 22. Moreover, this Court noted, sitting as trial judge, that there were sound tactical reasons for a joint trial and that the evidence did not warrant severance. TR 7/28/67 at pages 998–1000. *See also* United States v. Marchant, 25 U.S. (12 Wheat.) 480, 6 L.Ed. 700 (1827).

8. *Swain* makes it clear that no error occurs, under the allegation of this petition, if the prosecutor excluded blacks and

*Terry* requires petitioner to accept his attorney's decisions in this area.

9. Petitioner cites a number of cases in support of his request for relief, see, e. g., Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940); Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed. 2d 599 (1967). However, such cases are of no help inasmuch as each case involved the question of a continuing pattern of intentional and systematical exclusion of blacks from grand or petit jury service, a situation wholly dissimilar from the instant case.

United States v. Parker, 103 F.2d 857 (3rd Cir. 1939), cert. den., 307 U.S. 642, 59 S.Ct. 1044, 83 L.Ed. 1522 (1939); United States v. Williams, 421 F.2d 529 (8th Cir. 1970).

Although no case has been found where a federal court has been called upon to consider specifically the constitutional sufficiency of the procedure allegedly invoked by Washington, as they affect Weems, one state court decision in Kirkendoll v. State, 198 Tenn. 497, 281 S.W.2d 243, 253 (1955), agrees with the conclusion reached above in its holding that the exclusion of negroes by a white defendant, whose co-defendant was black, was free from objectional procedures:

> It seems to us that if the State, without denying the Negro defendant his constitutional rights, may exclude all Negroes from the jury by the use of peremptory challenges, then a Negro defendant has less reason to complain when the peremptory challenges were exercised by his co-defendant and not by the State. In such challenges the State has no control. Peremptory challenges may be exercised for any reason or for no reason and Sullins had a right to use his.

█ But this is not to say that the issue raised by Weems has not been implicitly determined by federal courts called upon to consider other aspects in the utilization of peremptory challenges. In this regard, analogous support for concluding that petitioner's claim presents no constitutional infirmity is found among those federal cases that hold that co-defendants are not entitled

to more peremptory challenges than that authorized by the statute despite any claimed conflict between the type of jurors desired by each defendant. See, e.g., United States v. Williams, 463 F.2d 393 (10th Cir. 1972); United States v. Stidham, 459 F.2d 297 (10th Cir. 1972), cert. den., 409 U.S. 868, 93 S.Ct. 168, 34 L.Ed.2d 118 (1972). *See also* Stilson v. United States, 250 U.S. 583, 586, 40 S. Ct. 28, 63 L.Ed. 1154 (1919). Moreover, United States v. Parker, 103 F.2d 857 (3rd Cir. 1939), cert. den., 307 U.S. 642, 59 S.Ct. 1044, 83 L.Ed. 1522 (1939), espoused no constitutional deprivation where a co-defendant exercised his peremptory challenges but thereafter plead guilty, relegating the remaining co-defendant to a jury partly chosen by the absent co-defendant.

█ Petitioner's second claim is also without merit. Weems alleges that he "appeared for the setting of bail, and was advised as to the nature of the charge and other legal proceedings without the aid of counsel". He does not state when the hearing transpired and makes no claim of prejudice. Even assuming that the hearing of which petitioner complains reached the status of a preliminary hearing, it is clear that since any hearing Weems may have had could only have been conducted prior to the date the assistance of counsel was required,[10] petitioner was not entitled to an attorney at such hearing absent a showing of actual prejudice constituting a denial of due process. Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed. 2d 636 (1972).

For the above reasons this petition is dismissed.

---

10. Weems was sentenced on October 19, 1967 and Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), where preliminary hearings are held to be a critical stage at which the accused is constitutionally entitled to the assistance of counsel, was held not to apply to hearings prior to June 22, 1970 in Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972).