Norman WILCOX

v.

UNITED STATES of America.

Richard JENKINS

v.

UNITED STATES of America.

Donald HALL

v.

UNITED STATES of America.

Lynn Ellen MORROW

v.

UNITED STATES of America.

Nos. N–75–112, B–75–160, B–75–161 and B–75–190.

United States District Court, D. Connecticut.

Aug. 5, 1975.

Norman Wilcox, pro se.

Richard Jenkins, pro se.

Donald Hall, pro se.

Lynn Ellen Morrow, pro se.

Thomas F. Maxwell, Jr., Asst. U. S. Atty., Bridgeport, Conn., for respondent.

### MEMORANDUM OF DECISION

NEWMAN, District Judge.

Petitioners' motions, all brought pursuant to 28 U.S.C. § 2255, present the single question whether they were deprived of any rights when they were absent from the courtroom during several days of hearings

on pre-trial motions prior to their joint trial on federal bank robbery charges.[1] Petitioners claim, in letters submitted to this Court without the assistance of counsel, that the conduct of the hearings in their absence was in violation of the Sixth Amendment to the United States Constitution and Fed.R. Crim.P. 43, and that they are therefore entitled to a new trial.[2] In response to this Court's order, the Government has responded to each of the petitions by submitting a memorandum of law and affidavits from a number of the persons who were involved in the proceedings now in dispute. The Government has also served interrogatories on three of the petitioners,[3] and because it considers the original responses in some respects unsatisfactory, has supplemented those interrogatories with a motion to compel responses to certain of the questions. Although the record varies in some minor respects from petitioner to petitioner, the material facts sufficient for a decision are not in dispute, and no hearing is required.

All petitioners were tried and convicted of the September 25, 1972, robbery of a branch of the Union Trust Company in Danbury, Connecticut. On March 12, 1973, this Court heard argument on petitioners' motions to dismiss the indictment, and began to take evidence on suppression motions also filed on behalf of petitioners. The suppression hearings were continued on March 13, 16, 26, and 30, and April 10. Each petitioner was at all times represented by separate, court-appointed counsel.

At the conclusion of the argument on the motion to dismiss, the Court asked counsel whether they wanted their clients present in Court for the suppression hearings that were about to begin; all petitioners were then in the Marshal's lockup in the courthouse, except for petitioner Hall, who was free on bond. The record does not reflect Hall's whereabouts. Attorney Thomas Clifford, counsel for petitioner Hall, responded "I have no request"; no other attorney made any response at all. After a brief procedural discussion, the Court began taking evidence on petitioners' motion to suppress evidence seized by the Government on several different occasions.

When Court resumed after lunch on March 12, the Court relayed to counsel a question posed by Chief Deputy United States Marshal Anthony Dirienzo, who wanted to know whether counsel desired their clients to remain in the building, or whether he could return them to their respective jails. Clifford was the first to say that he did not want his client to remain. After a brief discussion, attorney Emil Frankel, petitioner Wilcox's attorney, said that he also did not require his client's presence. Attorney Robert Oliver made a similar concession with respect to his client, petitioner Morrow. Attorney Daniel Sagarin, petitioner Jenkins' counsel, said nothing at all at this point. Sagarin has invoked the attorney-client privilege and has declined to respond to the Government's request to disclose his role in the proceedings. The Government, however, has submitted the affidavit of Marshal Dirienzo, who avers that he approached Sagarin on March 12 before Court opened and asked if counsel desired petitioners' presence in Court.

"I recall being advised by him as follows: that he (Attorney Sagarin) doubted it 'strongly' (that they [defense counsel] would want the defendants present in the courtroom during the hearing) as it would give the Government witnesses

---

1. A fifth defendant was also convicted at trial, but the Court granted his motion for a directed judgment of acquittal.

2. This issue is now raised for the first time in the course of this long proceeding. No objection was made at or before trial, although the Court issued a written memorandum of decision with respect to the pre-trial motions, and the issue was also not raised on direct appeal. See United States v. Jenkins, 496 F.2d 57 (2d

Cir. 1974). Even if petitioners' claim had merit, new trials would not be warranted. If the right to be present was not effectively waived, new suppression hearings could be held on any issues requiring the presence of a defendant.

3. The Government did not serve interrogatories on Wilcox.

who were going to identify them (the defendants) a 'preview'."

Dirienzo affidavit, ¶ 5. (All parentheticals in original). The Marshal then informed Sagarin that if counsel wanted the defendants, they should advise him. He says that he did not receive any request from Sagarin or any other attorney to bring any of the petitioners in his custody into the courtroom. In addition, the Government has also submitted the affidavit of attorney Oliver, who remembers at least two conversations among the attorneys, including Sagarin, "to the effect that they did not want their clients present in the courtroom . . so that the witnesses would not have an opportunity to observe their clients." Oliver affidavit, ¶ 5.

With one exception, the record indicates that no petitioner was again present in the building on any of the days on which suppression hearings were held. The exception is Wilcox, who testified on March 16 concerning events surrounding his own arrest, and who asked and was permitted to remain in Court following his testimony.[4]

The final three days of hearings, beginning on March 26, involved motions to suppress photographic identifications on the ground the photo spreads were suggestive. As the hearing began on that day, the prosecutor made the following representation to the Court, with all defense counsel present.

"I have had conversation with defense counsel in this case, and they each stated to me that they did not wish that their clients be present during this hearing. I offered to produce them, and they said they did not want them here.

"So, as far as the Government is concerned, none of the defendants have been brought here, at their counsel's request."

Before accepting this decision, the Court ascertained that none of the photo identifi-

cations was made in the presence of any defendant.

Wilcox's petition is the most detailed. He disputes none of the material facts stated above, but in the unverified document appears to contend that he was not aware, despite his presence in the building on March 12, that hearings had been held in his absence on March 12 and 13. The sworn affidavit of his attorney, Frankel, disputes this. He contends that he conferred with Wilcox prior to the commencement of the first suppression hearing and advised Wilcox "that he should not be in the courtroom during the pre-trial hearings because of the importance of identification testimony and the likelihood that his presence in the courtroom would insure his identification by witnesses." Frankel affidavit, ¶ 6. Frankel also claims Wilcox at no time requested to be present, until he elected to testify on March 16,[5] and that at no time thereafter did he make any request to be present.

Jenkins presented his motion in the form of a request to join the action commenced by Wilcox. His petition alleges no other specific details, except the claim that he "emphatically requested" of his attorney that he be present at every stage of the proceeding. In his sworn response to the Government's interrogatories, however, Jenkins invoked the attorney-client privilege and refused to answer questions that sought to probe his allegations. He refused to say under oath whether he discussed his not being present with his attorney, and what advice, if any, his attorney had offered with respect to his being present. He also refused in general to waive the privilege, and explicitly denied that he was claiming that his representation had been ineffective.

Hall's petition was limited to requesting permission to join with Wilcox, and he alleges no details at all. In responding to the Government's interrogatories, Hall ad-

---

4. Wilcox also claims he sent a letter to the Court on March 13 or 14 demanding that he be allowed to be present. No such letter appears in the Court files. In any event, in light of the ground of the present decision, the question of its existence vel non is not material.

5. Frankel's fears were justified. Wilcox was identified, when he chose to remain in Court on March 16 after his own testimony, by the Chief of the Danbury Police Department.

mits that he was out on bond and not in federal custody at the time of the hearings, and in all other respects duplicates Jenkins' responses; he also invokes the attorney-client privilege with respect to questions concerning consultation with his counsel on the advisability of his being present for the hearings, a position to which his attorney has adhered.

Morrow, who was in custody during the hearings, alleges no facts in her petition and has filed interrogatory responses identical to those submitted by Jenkins. Her attorney has also submitted an affidavit; he admits that Morrow was in the courthouse building on March 12 and that she remained in the Marshal's lockup for the entire day.

"At my request Lynn Ellen Morrow was not brought into the courtroom on March 12, 1973, and was not present for any of the evidentiary hearings held on the various pre-trial suppression motions."

Oliver affidavit, ¶ 4.

The Government does not dispute the claim that petitioners ·were in fact absent from the courtroom during the hearings; nor does it dispute the general proposition

that petitioners had a right to be present, e. g., United States v. Clark, 475 F.2d 240 (2d Cir. 1973); United States v. Dalli, 424 F.2d 45 (2d Cir. 1970). See 8A Moore's Federal Practice ¶ 43.03[1]. The Government's sole contention is that, for tactical reasons, each attorney chose to exclude his client from the hearings, and that this decision waived petitioners' right to be present as effectively as if the Court had conducted an on-the-record voir dire of each petitioner before acceding to his absence.[6]

There is no question that the right to be present, even during the trial itself, may be waived, United States v. Tortora, 464 F.2d 1202, 1208–10 (2d Cir. 1972),[7] and the Court of Appeals for this Circuit appears to assume that in-court statements of the attorney may be sufficient to effect the waiver, United States v. Crutcher, supra, 2 Cir., 405 F.2d 239 at 243, an assumption that there is little reason to question. No court has ever classified the right to be present at a pre-trial suppression hearing as one of those rights so clearly personal that only a personal, on-the-record statement by the defendant himself may suffice to waive it. See Winters v. Cook, 489 F.2d 174, 179

**6.** With respect to the hearings on the photographic identifications made out of petitioners' presence, the Government need not rest on waiver. Neither the Constitution nor Rule 43 assures the right to be present when such presence would be "useless, or the benefit but a shadow," Stein v. United States, 313 F.2d 518, 522 (9th Cir. 1962), citing Snyder v. Com. of Mass., 291 U.S. 97, 106, 54 S.Ct. 330, 78 L.Ed. 674 (1934). The issue at this segment of the hearing was not related to petitioners' guilt or innocence, compare United States v. Bell, 464 F.2d 667, 671 (2d Cir. 1972), and involved no events at which they were present and therefore able to advise their counsel on how to proceed with cross-examination. Cf. United States v. Gradsky, 434 F.2d 880 (5th Cir. 1970). Their presence would have served no useful purpose and was therefore not required.

Moreover, it is well settled that Rule 43 is subject to the harmless error provision of Rule 52(a), United States v. Arriagada, 451 F.2d 487 (4th Cir. 1971); United States v. Schor, 418 F.2d 26, 30 (2d Cir. 1969); United States v. Compagna, 146 F.2d 524, 528 (2d Cir. 1945) (L. Hand, J.). See also United States v. Crutcher, 405 F.2d 239, 244 text at n. 2 (2d Cir. 1968). For the reasons already expressed, the Court

would be prepared to hold that petitioners' absence from this portion of the hearings, assuming an unwaived right to be present, was harmless error beyond a reasonable doubt. See 3 Wright, Federal Practice and Procedure § 721, text at n. 8. The disposition of the case, however, makes it unnecessary to reach this point.

**7.** There is some authority for the proposition that a defendant in custody may never execute such a waiver. See United States v. Crutcher, 405 F.2d 239, 243 (2d Cir. 1968). These cases all relate either to events occurring at the trial itself, involving either the impanelling of the jury, ibid.; Cross v. United States, 117 U.S. App.D.C. 56, 325 F.2d 629 (1963), or improper communications between Court and jury, Evans v. United States, 284 F.2d 393 (6th Cir. 1960). No Court has ever suggested that this rule, if it is a rule, applies to pre-trial proceedings, and in light of the substantial tactical reasons for counsel to prefer their clients to be absent from such hearings, it would be unwarranted to apply such a rule in these circumstances.

(5th Cir. 1973) (*en banc*); Developments in the Law—Federal Habeas Corpus, 83 Harv. L.Rev. 1038, 1111 n. 102.

An attorney [8] may, without prior consultation with his client, waive the client's right to confront witnesses against him at trial by agreeing to the use at trial of a transcript of testimony taken at pre-trial hearings, *Rodriguez v. Nelson*, 286 F.Supp. 321 (C.D.Cal.1968); he may also waive the right to grand and petit juries selected without regard to race, *Aaron v. Capps*, 507 F.2d 685 (5th Cir. 1975); *Weems v. United States*, 361 F.Supp. 922 (D.Md.1973). See also, *Vessels v. Estelle*, 376 F.Supp. 1303, 1308 (S.D.Tex.1973), *aff'd*, 494 F.2d 1295 (5th Cir. 1974) (waiver of insanity defense). Each of these rights is at least as substantial as the right to be present at a pre-trial hearing not directly concerned with the determination of guilt; if an attorney may waive these rights, there is no reason why he may not waive the right to be present as well.

In *Crutcher, supra*, the Court of Appeals intimated in *dictum* that the waiver would be effective only if done with the client's knowledge and consent. *Crutcher*, however, involved the impanelling of the jury, a right mentioned specifically in Rule 43, and an event that is part of the trial itself. Moreover, the absence of a defendant from the jury selection process is particularly fraught with prejudice; prospective jurors would be very likely to draw adverse inferences from the failure of a criminal defendant to be present at the jury's selection. Such an opportunity for prejudice, almost unavoidably present at jury selection, simply does not exist at a suppression hearing.

■ The record in the present case demonstrates with sufficient clarity that each of the attorneys intended that his client not be in the courtroom, and that in each case the ground of decision was to avoid the possibility that the client would be identified from the witness stand by the Government's witnesses. This decision on a matter of trial strategy, made by the person to whom the conduct of the defense is by law confided, see *United States v. Sorrentino*, 175 F.2d 721 (3d Cir. 1949), precludes petitioners from collaterally attacking their convictions on the basis of the attorneys' decision. *Cf. Henry v. Mississippi*, 379 U.S. 443, 451–52, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

The affidavits of the defense attorneys and of Marshal Dirienzo, all described above, establish that this tactical reason was the basis for counsels' decision, and the Court's inquiries about counsels' desire for their clients' presence, at times when all counsel were in Court, is an adequate record on which to base the conclusion that all counsel in fact made the choice. The conclusion is additionally supported by the affidavit submitted by the Assistant United States Attorney who was the prosecutor in the case. He avers that he repeatedly informed counsel of his intention to seek in-court identifications of any defendant present during the hearings, a claim supported by the representation that he made to the Court at the beginning of the second segment of the hearings, to which no counsel responded.

Accordingly, the motions for relief pursuant to 28 U.S.C. § 2255 are denied.[9]

---

8. It of course makes no difference whether the attorney is appointed or retained, *cf. United States v. Marshall*, 488 F.2d 1169 (9th Cir. 1973).

9. It is unnecessary to decide the Government's motion to compel additional responses to its interrogatories.